CASE 34—PETITION EQUITY—DECEMBER 2.

# Clay v. Smallwood &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. WILLS—POWER OF APPOINTMENT.—When a power of appointment or distribution is given by a will, to be exercised as to a class of persons, while it is not necessary to the validity of the appointment that the shares under it shall be equal, each one of the class is entitled to a substantial portion of the estate; and if any one of them fails to receive it, the attempted execution of the power is void, and the estate will pass under the provisions of the will giving the power. In this case the power of appointment was given by the testator to his married daughters, providing that "each may devise one-third to whom she pleases of the property left her, the other two-thirds to her children if she has any; if none, one-half to her, the other to be distributed to my other children as she may direct," and it is held that one of the daughters who died without children could not exercise the power of appointment as to half of the estate received, so as to exclude any one of her brothers and sisters or their children.

GEO. DENNY, JR., FOR MARY J. CLAY.

1. The definition of "direct," as given by Webster's Dictionary, is "to determine the direction of; to regulate; to govern; to guide; to point out to with authority." Now if the married daughters under their father's will, had the right "to point out" who were the persons of the class designated that should take that portion of the estate, they had the right to select part of that class to the exclusion of the others.

2. If Mrs. Rogers had not exercised the power of appointment, the

property would have passed under the will of Warfield. That being the case, why was she given the right to exercise that power, unless it was to select which of the children she might desire should be the beneficiaries?

L. P. TARLTON ON SAME SIDE.

1. When a power of appointment among a class requires that each shall have a share, it is called a "distributive" or "non-exclusive" power; when it authorizes but does not direct, a selection of one or more to the exclusion of the others, it is called an "exclusive" power, and it is also "distributive." When it gives the power of appointing to a certain number of the class, but not all, it is exclusive only, and not distributive. (Leake, 389; Black's Law Dictionary, p. 921.)

2. "In many cases an exclusive appointment may be authorized by the apparent intention of the donor, although no words of exclusion are expressly used." (Sugden on Powers, 3 Am. Ed., vol. 1, page 575.)

3. In Woolem v. Tanner (5 Vesey, Jr., 218), Lord Loughborough decided that an "obligation to pay to and among all such child or children of A, in such parts, etc., as the obligor should by will or deed appoint," was validly executed by the appointment by will of the whole fund to one of the six children of A. In his opinion the chancellor said, "The fault of the plaintiff's argument is that they stop at the word 'all.' They must go on and finish the sentence, and then it is all such child or children as he shall appoint." (3 Am. Ed. Sudgen on Powers, vol. 2, 275; 6 Vesey, Jr., 793; 2 Marshall, 266; 2 B. M., 656; 3 Bush, 379.)

GEO. C. WEBB FOR APPELLEES.

1. If Mrs. Rogers had the right to exclude any of Warfield's children under the power given in his will, she could have excluded all but one, and given it all to one, which would not have been a distribution among his children which was expressly directed in the will. The power to *distribute* the estate among his children was what he gave, and not the right to *select* those among whom it was to be distributed. (Percy on Trusts, 4 ed., vol. 1, sec. 254; Mc-Gaughey's Adm'r v. Henry, 15 B. M., 397; Degman v. Degman, 34 S. W. Rep., 523; Cathey v. Cathey, 9 Humphrey, 470; 1 Roher on Legacies, 420; Lippincott v. Ridgway, 2 Stoçt., 164; Booth v. Allington, 39 Eng. L. & Eq., 250; Portsmouth v. Shackford, 46 N. H.,

423; Sugden on Powers, vol. 2, p. 202; Morris v. Owens, Call., 438; Bull v. Bull, 8 Conn., 47; Longmoor v. Brule, 2 Vesey, Jr., 124; Holson v. Rockhouse, 7 Ky. Law Rep., 195.)

L. P. TARLTON AND J. R. MORTON IN PETITION FOR REHEARING.

1. A "mere or naked power" of appointment by will to objects living at the donee's death, not by expressed mandatory words requiring that each, shall have a share, authorizes an exclusive appointment although no words of exclusion were expressly used by the donor in creating it. *In re* Veales' Trusts, 4 L. R., Chan. Div., 61; 5 L. R. Chan. Div., 622; Spring v. Biles, 1 Term Rep., 435; Doe v. Alchin, 2 Barnwell & Alderson, 122; Sugden on Powers, 8 Am. Ed., 574, note 1; Kerr v. Verner, 66 Penn. St., 326; Swift v. Gregson, 1 Term Rep., 432; Stuyvesant v. Neil, 67 How., Ph. N. Y., 16; Jones v. Tarin, 6 Simons, 255; Perry on Trusts, sec. 250.)

2. If a mere power to appoint is given to the first taker to be exercised or not in his discretion, no trust will be implied. And where there is an express limitation of the property over in case the power is not exercised, no trust can be implied. (Perry on Trusts, secs. 115 and 253 and notes; 134 U. S., 587; U. S., 342; 68 Penn. St., 480.)

3. When a power of appointment among a class requires that each shall have a share, it is called a "distributive or non-exclusive power." When it authorizes but does not direct a selection of one or more to the exclusion of the others, it is called an "exclusive" power and is also "distributive." When it gives the power of appointing to a certain number of the class but not to all, it is exclusive only, and not distributive. (Perry on Trusts, sec. 248; Withers v. Yeadon, 1 Rich. Eq. (S. C.), 328; 8 Vesey, Jr., 574; Black's Law Dict., 921; Sugden on Powers, 3 Amer. Ed., vol. 2, side page 207; Woodcock v. Rennick, 4 Beavan, 190.)

4. The English doctrine of "illusory appointments" laid down in Kemp v. Kemp, 5 Vesey, 849, has been abandoned by the English courts, and was never followed to any extent by American courts. (Graeff v. DeTurk, 44 Pa. St., 527; Frouty v. Frouty, Bailey's Eq. (S. C.), 530; White v. Hicks, 33 N. Y., 383; Gilbert v. Church, 19 Conn., 342; Butcher v. Butcher, 9 Vesey, 382; Mocalla v. Lansada, 12 Vesey, Jr., 123; Dyke v. Sylvester, *ib.*, 126.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

Elisha Warfield died leaving a last will and testament by which he made various devises to his children,

and by the eleventh clause of that instrument, after making a devise of certain portions of his estate to his daughters, by which the fee passed, he conferred upon them certain powers of disposition as to other portions of his estate, from which originated the present controversy. One of his daughters, Mrs. Laura R. Rogers, by her last will, attempted to execute the power conferred upon her, and the two wills, that of the father and daughter, are before this court for construction. There is no necessity, however, for considering any other question than that made upon the eleventh clause of her father's will. The testator at his death left several sons and daughters, and after making such devises to each of his children, as produced equality between them all, he made the following devise by the eleventh item: "That each of my married daughters may enjoy the benefit of the property that I gave them, I hereby constitute and appoint my wife their trustee, to receive and to hold their several portions of my property, alloted to them for their use and benefit, while they live, and at their death each may devise one-third to whom she pleases of the property left her, the other two-thirds to her children, if she has any, if none, then one-half to her, the other to be distributed to my other children as she may direct."

Mrs. Rogers died in November, 1891, leaving no child or children surviving her. Her will was admitted to probate and by its provisions having disposed of one-half the estate devised to her absolutely, by the second clause of the will she proceeded to devise the other half of the estate as follows: "The other half of the estate

taken and held in trust under my father's will, I direct, in accordance with its provisions, shall be divided between my sisters, Mary Jane, and Caroline. Mary Jane to have two-thirds to pass to her four daughters, Mary, Sallie, Laura and Annie, or the survivors; Caroline to have one-third, to pass to her son, L. P. Tarlton, and grand-daughter, Josephine Tarlton, or the survivors."

Her sister, Caroline, having died before the testatrix she made a codicil to her will as follows: "As a third codicil to my will, I direct that the devise in the second clause 'to my sister, Caroline,' now deceased, instead of to her, shall be to her son, L. P. Tarlton, and my niece, Kate Spears, equally, share and share alike."

It will be seen that in the exercise of the power conferred upon Mrs. Rogers by the eleventh clause of her father's will, she, by the provisions of her will gave two-thirds of the one-half, in which she had only a life estate, to her sister, Mary Jane, to pass to her four daughters, and the remaining third to L. P. Tarlton, a son of her sister, Caroline (who had died), and to her niece, Kate Spears, excluding the appellees, children of Elisha Warfield, or their children from any of the benefits of the devise made by the original testator, and under which the power was attempted to be executed.

The chancellor below held that the devise made by Mrs. Rogers, to her sister, Mary, and to the grand-children of the testator, was unauthorized by the will of her father passing no title to the devisees, and that all of the children living at the death of Elisha Warfield or their children took the absolute estate under the eleventh clause of his will.

It is contended by the appellants that the discretion vested in Mrs. Rogers, by the will of her father, gave her the power to select any one of the children as the object of the testator's bounty to the entire exclusion of the others, and that such was the intention of the testator, and for the appellees it is maintained that when the testator used the language, "one-half to her (the daughter, if childless), the other to be distributed to my other children as she may direct." His manifest purpose was to have this half distributed between his children so as to give to each a substantial share in the distribution.

It seems to be a well-recognized rule in equity that when the power is given to appoint or distribute among several, that each must have a substantial share, and this court in the recent case of Degman v. Degman 98 Ky., 717, held that where a power of appointment is given to be exercised, as to a class of persons, each one of the class is entitled to a substantial portion of the estate. In that case the devise was to the wife to be disposed of by her "among my children as she may *think best.*" The case of Kemp v. Kemp, reported in 5 Vesey's Chancery reports is a very instructive and exhaustive review of all the cases on the subject.

The Master of the Rolls seems to have reviewed all the authorities upon this question resulting in the conclusion that the execution of the power was void and that all were entitled to equal portions. In that case the testator made the following devise: "What remains after paying these legacies I give to my cousin, Martha Kemp, for her life, and then to be disposed of among her

children as she shall think proper." The fund to be disposed of in that case amounted to 1,900 pounds sterling, and to two of her children the donee of the power gave small sums, to one ten pounds sterling and to the other fifty pounds sterling and the remainder to another child. The court held that the devise was so unequal as to amount to total exclusion and directed an equal distribution. It was argued in that case that as the person creating the power was only the cousin of Martha Kemp, to whom the power was given, the case was essentially different from the exercise of a power given by a parent in which case it might be regarded as wrong for the person exercising the power to give nothing to those who had a natural right to expect something in the distribution, but the Master of the Rolls held otherwise. See also Alexander v. Alexander, 2 Vesey. The words, "to my other children as she may direct," evidently meant a distribution among the children, and not a distribution to one child and to grandchildren, to the exclusion of the other children of the testator living at her death. If the testator intended to authorize the donee of the power to select the object to take the estate he would have said, "to such child or children as she may deem the most needy, or to any one or more of my children as she may direct."

In this same clause of the will conferring the power the testator goes on to say: "I do not intend by placing their property (the daughters) in trust to abridge their control of it, but they may have the trustees changed and regulated as they may wish, etc.," and from this it

is argued that the power of disposition as to the one-half was left solely with the daughters with the right to make such selections as between their brothers and sisters as they might deem proper. We do not understand that this power of control and the right to use the estate, had any effect upon the disposition to be made of it, but signified the purpose of the testator as to the use and possession by the beneficiaries of the devises made, although held in trust.

It is further contended that the effect of the decision below is to pass the estate to the children as the law directs in case of intestacy, taking from Mrs. Rogers the right to dispose of the estate between the children as she might direct. If the exercise of the power is void, the estate must necessarily pass as if Mrs. Rogers had made no disposition of it, and under the provisions of her father's will it would pass to his children, or their children in equal parts, the children of those dying taking the share of their parents.

We do not understand that perfect equality must exist in the distribution under such authority as was given in this case, but the rule is, that those entitled must receive at least a substantial benefit from the devise.

The fact of the testator having used the word *direct* in so many provisions of his will, as when he *directs* a division of lands, or an allotment between his children, or *directs* certain things to be done, manifests no intention on the part of the testator of his purpose to vest in either of his daughters the power to disinherit any of his

children in that part of the estate in which they took only an estate for life. If the power of distribution had been given to the wife of the testator instead of the daughters to distribute his estate to his children as she may direct or think best, it would scarcely be contended that she could devise the whole to one child to the exclusion of the other children. A devise to such of the children as the donee of the power should select, or to such as she might direct would confer the power contended for, but the rule has been so long established in cases like the one before us, entitling all the objects to an interest in the devise that it must be adhered to, and the Chancellor must decide as was said in Kemp v. Kemp, whether the devise is substantial or not. That case has been followed by this court in the case of Degman v. Degman already referred to, and in McGaugheys, administrator, v. Henry, 15 B. M., this court in determining the extent of such powers said: "but as there is no express power of selection or exclusion, the authorities seem to require that in the execution of the power by the donee there should be an actual division among all, so that each should receive a substantial, though not necessarily an equal share."

The case in 5 Vesey is referred to in that case as settling the rule upon which the judgment below is based and we perceive no reason for departing from it.

Judgment affirmed.