WILLIAM HAWTHORN et al.

v.

GRACE A. ULRICH et al.

*Opinion filed February 17, 1904.*

1. WILLS—*when power of appointment is discretionary as to amount.*
Where a will, after devising a life estate to the testator's wife,
provides that at her death "one-half of the property then in her
possession is to be divided equally between my heirs and one-half
to be divided between her heirs in the manner in which she may
decide," the wife's power of appointment is discretionary as to the
portions of the one-half of the property which shall be given to her
heirs, respectively, provided each one is given some portion.

2. SAME—*power of appointment construed as to division of property.*
A wife, given power of appointment by will to distribute one-half
of certain property remaining at her death to the heirs of the tes-
tator, equally, and one-half to her own heirs *"in such manner as she
may decide,"* is not bound to give to her own heirs equal shares by
reason of a further provision that one of them, named, shall, in
addition to a certain specific legacy, "share equally with the heirs
in the whole estate," the meaning being that the designated heir
must be given at least *as.much* as any of the others.

3. SAME—*doctrine of illusory appointment does not obtain in Illinois.*
The doctrine of illusory appointment, under which a court of equity
might grant relief where one or more members of a class were
given a mere nominal share of an estate by the exercise of a power
of appointment, leaving the amount discretionary with the donee
of the power but requiring each member of the class to receive
something, does not obtain in Illinois.

APPEAL from the Circuit Court of McLean county;
the Hon. COLOSTIN D. MYERS, Judge, presiding.

TIPTON & TIPTON, for appellants.

BARRY & MORRISSEY, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Orin C. McCord died in McLean county, Illinois, tes-
tate, on the second day of June, 1899, leaving a widow,
Mary A. McCord, but leaving no descendants. By his

will he provided for the payment of his debts and funeral expenses, and then:

"*Second*—I give and bequeath to Mary A. McCord, my wife, all of my personal and real property for her use during her natural life, except five thousand dollars, ($5000,) which is to go to Grace A. Perkins at such time as my wife may deem wise. At the death of my wife one-half of the property then in her possession is to be divided equally between my heirs, and one-half to be divided between her heirs in the manner in which she may decide. Grace A. Perkins is also to share equally with the heirs in the whole estate at the disposition of the property at my wife's death, in addition to the five thousand ($5000) already mentioned in this will.

"If at any time my wife deems it necessary to dispose of the property to satisfy demands on her, she is at liberty to do so, and whatever of the estate is left at her death is to be divided as stated above."

The will nominated Mary A. McCord to be executrix without bond.

At the time of his death, in addition to his personal property, testator was seized of sixty-five acres of land in McLean county, fourteen acres of land in Putnam county, and two lots upon which he resided in Normal, McLean county, Illinois. On the 26th day of December, 1902, Mary A. McCord conveyed by deed the land in McLean county to Grace A. Perkins. The deed recites that it is made in payment of the five-thousand-dollar legacy, and also "for the purpose of remunerating the said Grace A. Perkins for services rendered the said Mary A. McCord since the death of the said Orin C. McCord," and purports to be a conveyance by Mary A. McCord in her own right and as executrix. At the same time she executed her last will and testament, which was duly admitted to probate after her death. After the death of her husband Mrs. McCord also sold and conveyed the fourteen-acre tract in Putnam county. She departed this

life in March, 1903, leaving no descendants. By her will she bequeathed $200 to Susan E. McCord out of her individual estate and the residue of her individual estate to Grace A. Perkins, and provided that the land theretofore deeded to Grace A. Perkins should vest in her in fee, for the purposes stated in the deed, and the will then proceeds:

"By the last will of my husband I was vested with discretion to appoint the distribution of his residuary estate left at my death as therein provided, and in exercise of such discretion and power of appointment, so far as conferred upon me in and by said will, I declare my will and intention as follows: As to the one-half of said residuary property devised and bequeathed to the heirs of my said husband I desire said will carried out strictly in accordance with my husband's wishes. As to the remaining one-half of said residuary estate of my husband in my possession at the time of my death and by him directed to be divided between my heirs in the manner I should decide, it is my will, and I so desire and decide and appoint, that my said niece, Grace A. Perkins, shall take and receive as her share all of said one-half, except that each one of my heirs-at-law other than said Grace A. Perkins shall be given and paid out of said one-half the sum of five dollars ($5.00), hereby explicitly declaring it to be my desire and decision that said Grace A. Perkins shall receive from my husband's residuary estate all that a proper and legal construction of said will of my husband will entitle her to and all of said estate which I have any right or power to appoint or award to her, except that each of my remaining heirs shall receive said sum of five dollars ($5.00) therefrom."

Grace A. Perkins was a daughter of a deceased sister of Mary A. McCord. She had been raised in the family of Orin C. McCord and his wife, and had reached womanhood prior to the death of the widow. She has since married, and as Grace A. Ulrich is one of the appellees herein.

On July 3, 1903, William Hawthorn and Amanda McKnight, the appellants, who are heirs of Mary A. McCord, filed their bill for partition in the circuit court of McLean county. This bill was amended several times, and as finally considered stated all the foregoing facts; made the other heirs of Mary A. McCord and all the heirs of Orin C. McCord defendants; charged that one-half of the real estate of which Orin C. McCord died seized, excepting the fourteen acres in Putnam county, is vested in the heirs-at-law of Orin C. McCord and the other half in the heirs-at-law of Mary A. McCord, all subject to the payment of the five-thousand-dollar legacy to Grace A. Perkins; that the deed made by Mary A. McCord for the land in McLean county, which is averred to be of the value of $9750, was fraudulently and by undue influence obtained by the grantee therein and is a cloud upon the title of the owners of said real estate; prays that the deed to Grace A. Perkins be set aside; that she be charged with rent for the premises described therein, and that partition be had of all the real estate of which Orin C. McCord died seized, which is located in McLean county, among the owners. thereof as such ownership is stated in the bill, charged with the payment of the five-thousand-dollar legacy to Grace A. Perkins, now Ulrich. To this bill the circuit court sustained a general and special demurrer interposed by Grace A. Ulrich. The bill was thereupon dismissed for want of equity, and the complainants appeal to this court.

It is first urged that Mary A. McCord took only a life estate under the will of her husband, and that the rule is, that where a power of disposal accompanies a bequest or devise of a life estate, the power of disposal is only co-extensive with the estate which the devisee takes under the will, and must be such a disposal as a tenant for life could make, unless there are other words clearly indicating that a larger power was intended, and that by the terms of the will of Orin C. McCord the only power

given to dispose of the fee was a power to be exercised for the purpose of meeting necessary demands upon Mary A. McCord, and that, subject to the exercise of that power for that purpose and the payment of debts and specific legacies, and subject to the life estate of Mary A. McCord, the heirs of Orin C. McCord, as a class, and the heirs of Mary A. McCord, as a class, each took a vested remainder in his estate. The cardinal rule for the construction of wills requires the ascertainment of the testator's intention as he has expressed it by the language used, and when so ascertained it must be effectuated, unless it be in some instance where he uses terms which have a settled and definite meaning in the law, when such terms must be given such meaning even though the result is to defeat the manifest intention of the testator, as sometimes unfortunately occurs in enforcing the rule in *Shelley's case.*

No question arises in this controversy in reference to the portion of the estate of Orin C. McCord which has reached his heirs under his will and under the will of his widow. They do not attack either of the deeds made by Mary A. McCord. The only question that arises is in reference to that portion of the property which the testator intended should pass eventually to the heirs of his wife, and the first position of appellants is, that Mary A. McCord had no power of appointment as to the remainder in the one-half of the estate which was to pass to her heirs, but that such heirs are entitled to take it, share and share alike, and that her appointment is entirely void because beyond the power conferred upon her. The remainder in one-half of the property is "to be divided between her heirs *in the manner in which she may decide.*" To put upon this will the construction which appellants ask is to disregard entirely the words italicized. The testator meant them to apply to something. They could not have been intended to apply to the life interest, because his purpose was that she should retain that herself,

and as every word and every clause of the will should be given meaning, this power of appointment must be held to apply to that portion of the remainder which was to pass to the heirs of Mary A. McCord.

In considering the portion of the will that confers the power of appointment, counsel for appellants place great stress upon the sentence which immediately follows, and which is: "Grace A. Perkins is also to share equally with the heirs in the whole estate at the disposition of the property at my wife's death, in addition to the five thousand ($5000) already mentioned in this will," the argument being, that if she is to share equally with the heirs of the wife, then they must each take an equal amount or her share cannot be equal to the share of each of the others. It must be remembered that the property passing to testator's heirs is to be divided among them share and share alike, and when the language last quoted is considered in the light of that fact, it plainly shows his intention to be that she should share equally with his heirs in one-half of the remainder. In effect she is by this sentence made one of his heirs, and her right to share as one of the heirs of his wife is not prejudiced or lessened or taken away by the five-thousand-dollar legacy. So far as his will is concerned, it simply means that she has an equal right to share with the other heirs of his wife, the right of all, so far as the portion each will take, being equally subject to the power of appointment. Under this power each heir of the wife must take something. The portion which each will take is left to her discretion.

Orin C. McCord, after providing for the payment of legal charges against his estate, and the legacy of $5000 to the woman who had grown from childhood in his family, and for the maintenance of his wife during her remaining years, was undoubtedly, from the language of his will, animated by a desire to divide the remainder of his property equally between his wife and himself, ulti-

mately vesting the one-half thereof in his own heirs and Grace A. Perkins and the remaining one-half in the heirs of his wife, and knowing his own right to distribute this property among his own heirs in such shares as he saw fit, his purpose was to confer the same right upon his wife in reference to the property that was to pass to her family. At the death of Orin C. McCord her heirs, as a class, took a vested remainder in the portion of his estate which was eventually to pass into their possession, subject to the exercise of this power of appointment. If this be true, however, it is said that her will is a fraud upon the power she possessed, and we are asked to apply the doctrine of illusory appointment and hold the execution of the power void, and direct an equal distribution of the property which by the will of Orin C. McCord was to pass to the heirs of Mary A. McCord, among all such heirs.

Where, by the terms of an instrument, a power is given to appoint property to or among certain persons, the amount that each is to receive being left to the discretion of the donee of the power, and where none of the beneficiaries can be excluded, and where a mere nominal share is appointed to one or more of them, such an appointment is termed illusory. 2 Am. & Eng. Ency. of Law, —2d ed.—p. 475; 1 Bouvier's Law Dic. p. 769.

Formerly, in England, while it was held in a suit at law that the appointment of any sum, however small, to one of the beneficiaries would satisfy the power, in equity the rule was different, and while a court of chancery would not require an equal distribution of the property among all the persons to whom it was to be appointed, still it was held that some substantial amount must be given to each, and where the amount given to any one was merely nominal, the appointment would be set aside and the property distributed in such manner as would seem just to the court. A very interesting discussion of this doctrine is found at page 431 of volume 1 of White & Tudor's Leading Cases in Equity, where it is

said: "Much litigation arose in consequence of the great difficulty of deciding what was a substantial, and not merely an illusory, share, and great dissatisfaction with the doctrine was expressed by the most eminent judges, who endeavored, in many cases, to narrow it.   *   *   * In the celebrated case of *Butcher* v. *Butcher*, 9 Ves. 382, the objects of the power were nine in number, and the fund to be appointed amongst them about £17,000.   To some of the objects of the power, shares of £200 three per cents, only, were given.   Sir W. Grant, M. R., held the appointment not to be illusory, but, like Lord Alvanley, strongly disapproved of this doctrine of equity. 'To say,' he observed, 'that under such a power an illusory share must not be given, or that a substantial share must be given, is rather to raise a question than to establish a rule.   What is an illusory share and what is a substantial share?   Is it to be judged of upon a mere statement of the sum given, without reference to the amount of the fortune which is the subject of the power? If so, what is the sum that must be given to exclude the inference of the court?   What is the limit of the amount at which it ceases to be illusory and begins to be substantial?   If it is to be considered with reference to the amount of the fortune, what is the proportion, either of the whole or of the share, that would belong to each upon an equal division?   In terms, the power, though limited as to objects, is discretionary as to shares.   A court of law says, no object can be excluded; but there it stops.   It does not attempt to correct any, the extremest, inequality in the distribution.   *   *   * As no case has been found in which a sum of this amount has been declared illusory, there is no ground upon which I think myself justified in determining that this is an invalid appointment.'   Later, in another case, the same master said: 'I adhere to the rule I laid down in *Butcher* v. *Butcher*, that I will go as far as I am bound by an authority, but no farther.   Show me a case in which a spe-

cific sum or an equal proportion of what would be the
share of each object of the appointment upon an equal
division has been held to be illusory, and I will, in the
same case, make the same decision.   But where I am de-
prived of the guidance or freed from the compulsion of
authority I will not hold any appointment to be invalid
upon that ground of objection.'"   Lord Eldon affirmed
this holding of the master of the rolls, (16 Ves. 15,) but
expressed the view that it, in effect, destroyed all the
authorities, because no two cases would ever be the
same, and that if an amount could not be held illusory
except by showing that the same amount or the same
proportion of an estate had been held illusory in some
earlier case, then the doctrine could no longer be ap-
plied.   The editors of the work from which we have
been quoting, state that "the interference of courts of
equity in cases of illusory appointments was so unsatis-
factory in its results that the legislature at length inter-
fered, and by statute 1 Will. 4, c. 46, passed June 16, 1830,
it was enacted that no appointment   *   *   *   should
be invalid or impeached in equity on the ground that an
unsubstantial, illusory or nominal share," only, should
be appointed to one or more of the objects of the power.

Appellants cite four cases to show that the doctrine
has been adopted by some of the States of the Union.

In *Hatchett* v. *Hatchett,* 103 Ala. 556, in a suit at law,
a plaintiff sought relief for the reason that in the exe-
cution of a power he had received merely an illusory
appointment.   The court said that the doctrine had no
standing in a court of law, and that plaintiff's remedy,
"if, indeed, he has any upon this aspect, would be in a
court of equity."

In *Thrasher* v. *Ballard,* 35 W. Va. 524, a power was to
be executed for the benefit of two.   The donee of the
power executed it by a will devising all the property to
one.   In discussing the law of appointment, in meeting
the argument of counsel who sought to uphold the exe-

cution of the power, it was said that the donee of the power could not give one child substantially all the estate and give the other only a nominal amount, for the reason that this would be an illusory appointment, but the holding was, that the power of appointment in that case remained unexecuted because no property at all was given to one of the objects of the power.

In *Degman* v. *Degman*, 98 Ky. 717, a power of appointment existed in the widow of the testator to divide the property among his children as she might think best, at the expiration of her life estate therein. She attempted to execute the power by deed, and conveyed a much greater portion of the property to one of the children than to either of the others, for the purpose of providing for the support of herself and her second husband during their respective lives. These deeds were set aside for the reason that the power of appointment must be exercised for the benefit of the parties entitled to the property and not with a view of benefiting the donee of the power, and for the reason that an appointment for such purpose is fraudulent and void; and it is also said that each of the beneficiaries was entitled to a substantial portion of the estate. The decision, however, could not have been based on the latter ground, because the least amount of property received by either of the children under the deeds was sixty-one acres of land.

In *Clay* v. *Smallwood*, 100 Ky. 212, testator's daughter was given a power of appointment, to be exercised at her death, for the purpose of distributing a certain share of his estate "to my other children as she may direct." She attempted to execute the power by devising this property to two of her sisters and their children and to the daughter of another sister, excluding entirely other children of the testator. The court held that the attempted execution of the power passed no title whatever, and that all of the children of the testator living at the time of his death took an interest in this property. This was

on the theory that the exercise of the power was void, for the reason that some of the beneficiaries were excluded entirely; but in passing upon the question the court refers to *Kemp* v. *Kemp*, 5 Ves. 848, *Alexander* v. *Alexander*, 2 Ves. Sr. 639, and *Degman* v. *Degman, supra,* as authorities for the proposition that each of those entitled must receive a substantial share of the estate.

We think it fair to conclude from these authorities that if the question was properly presented, in Kentucky at least, the rule of the earlier English authorities would be followed. We have, however, been referred to no case, and we have been unable to discover any case, where the doctrine of illusory appointment has been actually applied in any of the American States. In none of the American cases relied upon by appellants has the execution of the power been set aside or held null and void for the reason that the portion received by some one or more of the beneficiaries was nominal or illusory. In the cases where the doctrine has been discussed with favor, and where the holding has been that the power was improperly executed, it has not been on the basis that one or more of the shares was merely nominal.

Pomeroy states the rule to be: "When the trust power is of such a nature that the donee-trustee is authorized to dispose of the property among a class and is clothed with a discretion, a court of equity will not interfere to control that discretion, or interfere with the mode of exercising it, if he does, in fact, make an appointment." 2 Pomeroy's Eq. Jur. sec. 1002.

In a number of American cases, where the question has been properly presented, it has been held that where the power of appointment is to be exercised according to the discretion of the person to whom it is committed, no appointment will be defeated, no matter how unjust or unreasonable it may seem, and no matter how nominal or illusory the portion received by some of the beneficiaries may be, provided, only, that some portion of the

estate passes to each of the objects of the power. *Graeff*
v. *DeTurk*, 44 Pa. St. 527; *Ingram* v. *Meade*, 3 Wall. Jr. 32;
*Fronty* v. *Fronty*, 1 Bailey's Eq. 527; *Lines* v. *Darden*, 5 Fla.
51; *VanSyckel's Estate*, 9 Pa. Dist. 367; *Cowles* v. *Brown*, 4
Call, (Va.) 477.

In *Graeff* v. *DeTurk*, *supra*, a devisee was authorized to
appoint among the heirs of his body, and he exercised
the power by giving one of his children one hundred and
thirty acres and giving to the three children of another
three acres among them.  The court, in holding this to
be a valid exercise of the power, said the English equity
rule, that where there is a power of appointment among
several distributees it cannot be legally exercised ex-
cept by giving to each appointee a beneficial interest in
the fund fairly proportioned to the amount for distribu-
tion, and that the appointment of a nominal share to a
beneficiary is illusory and void, has never been adopted
in Pennsylvania.

Certain difficulties in the way of the practical en-
forcement of this doctrine would cause us to hesitate
about adopting it, even if it had received the unquestion-
ing approval of courts of last resort in other States.  The
only basis upon which a court of equity could interfere
would be that the power had not been executed as the
testator intended, for the reason that he intended each
of the beneficiaries to receive a substantial portion of
his bounty.  Manifestly he did not intend that they must
receive equal portions, or the power to decide what por-
tion each should receive would not have been given an-
other.  If, now, a court of chancery determines that the
appointment made is a fraud upon the power and shall
be set aside for the reason that the donor's purpose has
been thwarted, what, then, shall be done with the prop-
erty?  Shall it be distributed equally?  That, too, in the
absence of a direction to that effect from the donee of
the power, would be as manifestly a perversion of his
will, and it would seem to be impossible, by any investi-

gation, to determine just what portion each must receive to make the final distribution conform to the desires of the testator. Equity cannot do better than to leave the power of distribution where the testator left it, and refuse to interfere where the power has been executed by conveying to each intended beneficiary some portion, however small, of the testator's property.

In view of the fact that this doctrine was long discredited and reluctantly enforced by the English courts of equity until the steadily increasing dissatisfaction was recognized by a statute entirely forbidding its application, and in view of the further fact that no case, as it seems, can be found in which it has ever been applied by an American court, we are of the opinion that in the light of the authorities above cited from Pennsylvania and other States, and in consideration of the reasons which make against the rule and its enforcement, we would not be warranted in engrafting this doctrine of illusory appointment upon the laws of Illinois.

The execution of the power is also questioned because no person is specifically required to make the payment of the five-dollar legacy to each of the heirs of Mary A. McCord, other than Grace A. Ulrich. It is to be observed that the will directs that these five-dollar legacies are to be paid out of the one-half of the remainder which passes to the heirs of the testatrix. If in that one-half there be personal property sufficient, these legacies will be payable by her executor in due course. If there be not personal property sufficient, we regard the language of the will as sufficient to charge them upon the real estate, and they would then be payable by the principal devisee.

What we have said makes it unnecessary to dispose of the error assigned which questions the conveyance of the sixty-five acres. No one complains of that except the heirs of Mary A. McCord, and as they would, in any event, have no interest in the property beyond the

amounts fixed in her will, the error in sustaining that conveyance, if any there be, is one of which they can not complain.

The decree of the circuit court will be affirmed.

*Decree affirmed.*