## Barrett's Executor, et al. v. Barrett, et al.

(Decided October 26, 1915.)

Appeal from the Jefferson Circuit Court
(Chancery Branch No. 1).

1. Wills—Powers of Appointment—Illusory Appointment Doctrine.—
Where a testator devised a fund in trust for the benefit of a
son during life, and provided that such fund at the death of the
son, should pass as the son may direct by last will, to his wife
and heirs at law, the power of appointment was non-exclusive.
Being non-exclusive, the exclusion of any member of the desig-
nated class would invalidate the attempted exercise of the power,
as would also the appointment to any member of the class of
a merely illusory or nominal amount. So where the total fund
was $150,000 and the son appointed $1,000 to his sister and $1,000
to each of his two brothers, and the remaining $147,000 to his
wife, they being childless, the appointments to the brothers and
sister of the donee of the power were illusory and invalidated
the execution of the power.

2. Powers—Execution of Non-Exclusive Power of Appointment—Il-
lusory Appointment Doctrine.—The donee of a non-exclusive power
of appointment must give to each member of the designated class
a substantial share of the fund to be appointed.

3. Wills—Estoppel to Attack by Acceptance of Devise or Legacy.—
One who accepts a devise or legacy under a will without a knowl-
edge of his rights is not estopped to attack the will where his
temporary acquiescence has not prejudiced the rights of any
other person.

HELM BRUCE, BRUCE & BULLITT and GROVER G. SALE for
appellants.

HUMPHREY, MIDDLETON & HUMPHREY for appellees.

OPINION OF THE COURT BY JUDGE HANNAH.—Affirming.

Thomas L. Barrett died in 1896 domiciled in Louis-
ville, Kentucky. He had five children; A. Hite Barrett,
Theodore L. Barrett, Virgie Barrett Bridges, Irwin T.
Barrett and Lewis Barrett. By his will, after making a
few minor bequests, he devised the bulk of his property
to a trustee, directing that it be divided into five equal
parts, one part to be held in trust for each of the above
mentioned children.

In the case of each of the four sons, it was provided
that his part should be held for his benefit during life,
with power in the trustee to pay over the principal or any

part thereof, if in the judgment of the trustee and an advisory committee nominated by the will, it was deemed wise to do so; and it was further provided that at the death of each of said sons, "the share as it then exist shall pass as he may direct by last will, to his wife and heirs-at-law, and in the absence of a will, to his widow, if he leaves one, and to his heirs-at-law in the same proportion exactly as if he had died owning the same in fee simple, according to the law of descent and distribution as it then be in force in the State of Kentucky."

The trustee never paid over to Lewis Barrett any part of the principal of his share, which at his death amounted to $150,000. He died in 1910 survived by his widow, Gertrude Ketcham Barrett, no children having been born to them. In the meantime one of the brothers, Irwin T. Barrett, had died intestate and that portion of the estate held for him was distributed one-half to his widow and the other half to his brothers and sister.

By will, Lewis Barrett appointed to his sister, Virgie Barrett Bridges, and to his brothers, A. Hite Barrett and Theodore L. Barrett, the sum of one thousand dollars each; the remaining $147,000 he devised to a trustee for the use and benefit of his widow for life, with the power to dispose of the estate by will.

In 1913, the widow, Gertrude K. Barrett died, leaving a will devising the $147,000 appointed to her by her husband, Lewis Barrett, to a trustee for the use and benefit of her mother, Mrs. Elizabeth Ketcham, her brother, James B. Ketcham and her sister, Grace Ketcham.

This action was thereupon instituted in the Jefferson Circuit Court by A. Hite Barrett, Theodore L. Barrett and Virgie Barrett Bridges, against Gertrude Ketcham, Barrett's executor and trustee under the will, and the beneficiaries thereunder as above mentioned, to require the executor and trustee to turn over to them one-half of the estate in its possession. The plaintiffs having theretofore received and accepted the one thousand dollars so appointed to each of them by the will of Lewis Barrett, paid the same into court.

The court below, having rendered a judgment in accordance with the prayer of the petition, the defendants are here upon appeal.

This action was brought upon the theory that the will of Lewis Barrett did not constitute a valid exercise of the power of appointment granted to him by the will

of his father, Thomas L. Barrett, which provided that his share, "as it then exist, shall pass as he may direct by last will, to his wife and heirs at law;" that the power of appointment thus granted was a non-exclusive power; that being such, the donee in order to execute the power in a valid manner, must have appointed to each member of the designated class a substantial share of the fund subject to the power; that the appointment of only one thousand dollars to the heirs at law of the donee of the power and of one hundred and forty-seven thousand dollars to the widow, was such that the appointments to the heirs were merely illusory; and that, therefore, the will of Lewis Barrett was void for failure to conform to the power of appointment in execution of which it was made, and his heirs at law should take as if no will had been made by him.

1. Powers of appointment to a class are exclusive or non-exclusive; exclusive, when there is granted to the donee of the power the right to exclude entirely any members of the designated class; and non-exclusive, when no such right of selection or exclusion is granted.

In the case of non-exclusive powers, the exclusion of any member of the designated class in making the appointments will invalidate the attempted exercise of the power.

2. And, as a corollary of the rule of the invalidation of a non-exclusive power by the exclusion of a member of the designated class of appointees, there has been developed the further doctrine that the donee of a non-exclusive power must not only not exclude any member of the designated class, but he must also give to each a substantial share of the fund to be appointed, the failure to do which constitutes it an illusory appointment, and invalidates the attempted execution of the power, in the same manner as does an entire exclusion of such member of the designated class. Under the illusory appointment doctrine, a non-exclusive power cannot be legally exercised except by giving to each appointee, a beneficial interest in the fund, fairly proportioned to the amount for distribution; and the appointment of a nominal share to a beneficiary is illusory. 31 Cyc., 1137.

3. So, as the ultimate question of law in this connection is whether the will of Lewis Barrett is void under the illusory appointment doctrine, the first inquiry is

whether the power granted to him by the will of his father was an exclusive or non-exclusive power.

In McGaughey's Admr. v. Henry, 15 B. M., 383, it was said, upon the authority of Kempe v. Kempe, 5 Ves. Jr., 850, 31 Eng. Rep. Reprint, 891, that the power of appointment is non-exclusive where there is no express power of selection or exclusion.

In Degman v. Degman, 98 Ky., 717, 34 S. W., 523, 17 R., 1310, a power of appointment was conferred upon the donor's widow, to dispose of the property devised "among my children as she may think best." This was held to be a non-exclusive power.

And in Clay v. Smallwood, 100 Ky., 212, 38 S. W., 7, 19 R., 50, a daughter of the testator was given the power to dispose of one-half of the estate to the donor's "other children as she may direct." This was likewise held to be a non-exclusive power.

In Levi v. Fidelity Trust & Safety Vault Co., 121 Ky., 82, 88 S. W., 1083, 28 R., 40, the widow of the testator was given the power to "will or distribute to her relations and to my relations any property, real or personal, as she may choose or desire them to have," the testator further stating: "I am satisfied that she will act justly in this matter." This was held to be an exclusive power.

A consideration of the foregoing cases and of the rule that where there is no express power of selection or exclusion, the power of appointment is non-exclusive, is sufficient, we think, to demonstrate that the power granted under the will of Thomas Barrett was a non-exclusive power.

4. The power of appointment conferred upon Lewis Barrett by the will of his father being, therefore, a non-exclusive one, we are confronted with the question whether the appointments made by him to his brothers and his sister were illusory, that is, whether Lewis Barrett appointed to his brothers and sister a substantial share in the fund when he gave to them the sum of one thousand dollars each, and to his widow the remaining one hundred and forty-seven thousand dollars.

It seems to us that the mere statement of the proposition carries with it the answer that the sums so appointed were not sufficient to constitute a substantial compliance with the requirements of the illusory appointment doctrine. True it is that one thousand dollars is a substantial sum of money in itself; but the question

here is, as we think, its relation to the whole of the amount to be distributed pursuant to the power. Viewed from that standpoint, or even from the standpoint of that disposition of the estate which would have been effected had Lewis Barrett failed to exercise the power of appointment of which he was the donee in virtue of his father's will, it may readily be seen that the sense of proportion is grossly violated by such an execution of the power.

So, if the illusory appointment doctrine is the law in Kentucky, as contended by appellees and denied by appellants, the will of Lewis Barrett was clearly not a valid execution of the power of appointment here involved.

5.  It may be conceded that the illusory appointment doctrine, although it originated in England, has been the subject of much criticism by able English jurists; and that it was abrogated in 1830 by Lord St. Leonards' Act (1 Wm., 4, c. 46); and that in 1874, by Lord Selborne's Act (37-38 Vict., c. 37), the distinction between exclusive and non-exclusive powers was practically abolished.

In McGibbon v. Abbott, L. R., 10 App. Cas., 653, the English Privy Council, in referring to the course of decision in respect of this doctrine said that it had been swept away by the legislature as fraught with inconvenience and mischief.

It seems to us, however, without desiring to lay ourselves open to a charge of the undue assumption of superior powers of discrimination, that a careful review of the English authorities will produce the conviction that the mischief arose, not from any fault of the illusory appointment doctrine, or of the rules establishing the distinction between powers exclusive and non-exclusive, but rather because of a too liberal construction of certain powers of appointment as non-exclusive, when in point of fact the evident intention of the testator was to grant an exclusive power.

In its real and proper sense, the illusory appointment doctrine does not involve the substitution of the opinion of the chancellor for the discretion vested in the donee of the power, in respect of the extent of the appointments made in execution thereof; for, where the power is non-exclusive, then of necessity the donee of the power has no discretion except such as is involved in a distribu-

tion of the estate to the appointees after the giving to each of the class a substantial share, and with that discretion the doctrine mentioned does not interfere.

But, an unlimited, uncontrolled discretion on the part of the donee of the power in respect of the value of the shares so distributed to the appointees, would be nothing more and nothing less than the abolition of the distinction between exclusive and non-exclusive powers; and that is a distinction which this court will not abolish. To do so would be to take from the testator the right to require that the donee of the power of appointment shall recognize all the members of the designated class of appointees in the execution of the power.

On the other hand, so long as the distinction between powers exclusive and powers non-exclusive is preserved, so long as there is such a thing as a non-exclusive power, it inevitably follows that the illusory appointment doctrine must likewise be preserved. Otherwise, the donee of a non-exclusive power, while not permitted to exclude entirely any member of the designated class of appointees, might just as effectually do so by means of an illusory appointment. It is manifest, therefore, that the enforcement and maintenance of the distinction between powers exclusive and non-exclusive, of necessity raises the doctrine of illusive appointments, requiring that where the power of appointment to a class is non-exclusive, it must be executed according to its terms, and that the donee of such a power shall not be permitted to thwart the intention of the donor of the power, under the guise of an illusory appointment entirely out of proportion to the estate appointed.

It has been said that the doctrine is founded upon no principle, and that it is an arbitrary one, subject to no restraint or limitation. But in this we do not concur, for it is grounded upon the principle that where a testator and donor of a power of appointment has confided to the donee thereof a non-exclusive power to dispose of the estate to the members of a designated class, the donee must fairly and reasonably execute the power and justify the confidence reposed in him, and that equity will nullify any attempt to betray the trust thus created. Nor is the doctrine an arbitrary one, subject to no retraint or limitation; for, if the appointments made in execution of the power are fairly and reasonably proportioned to the estate so distributed, there is a valid execution of the power

notwithstanding that the members of the designated class are not made equal in the distribution. If such a rule is arbitrary then most, if not all, of the rules of equity possess the same attribute.

It may be conceded that in the Kentucky cases heretofore mentioned, the illusory appointment doctrine was not directly involved. In McGaughey's Admr. v. Henry, *supra,* it was stated to be "the rule," but recognized as not therein applicable. In Degman v. Degman, *supra,* it was again stated to be "the well settled doctrine," though in that case, the direct question was the effect of exercising the power in securing to the donee thereof a personal benefit, rather than the making of an illusory appointment. And, in Clay v. Smallwood, *supra,* it was also stated "to be a well recognized rule in equity," though in that case there was involved an entire exclusion of one of the members of the designated class, the power of appointment being non-exclusive. If an analysis of these cases leaves any doubt, however, that the illusory appointment doctrine is the law of this State, we have no hesitation now in adopting it as a competent rule in the testing of the execution of non-exclusive powers.

It follows, therefore, that the will of Lewis Barrett is void for failure to conform to the power of appointment in execution of which the will was made.

6. But, it is contended by appellants that as appellees accepted the one thousand dollars appointed to each of them by the will of Lewis Barrett, they are now estopped from questioning the failure to conform to the power of appointment given to him by the will of his father; this contention being based upon the well known doctrine that one cannot take under a will and at the same time contest its validity.

We find but little merit in this contention in the instant case. The appointments so made to, and accepted by appellees, were manifestly illusory. The money received was in reality their own, and we have been unable to see anything in the acceptance thereof that would render inequitable their present attack upon the validity of the Lewis Barrett will because of his failure to properly exercise the power of which he was the donee.

Estoppel rests largely upon injury or prejudice to the rights of him who asserts it; and appellants have not been injured by the temporary acquiescence of appellees. It is argued, however, that had Mrs. Gertrude K. Barrett

by an assertion upon the part of appellees of their present attack upon the will of Lewis Barrett, advised Mrs. Barrett that she had but one-half of the $150,000 to dispose of by will, she would have made a different disposition of it. She devised the $147,000 in trust, one-half of the income to go to her mother during life, and the other half of the income to be divided between her brother and her sister during life, the whole of the income to be divided between them in the event of the death of her mother, and upon the death of her brother and sister the principal of the estate to be divided *per stirpes* among their issue. But this alleged injury or prejudice seems to us entirely too speculative to bring it within the class of detriments which render an estoppel operative.

In this State the doctrine of estoppel by acquiescence or by acceptance of benefits under a will, has not been freely applied. Deppen's Trustee v. Deppen, 132 Ky., 755, 117 S. W., 352; Smith v. Smith, 6 R., 453; Pinkston v. Pinkston, 13 R., 206; Brown v. Brown, 22 R., 840, 58 S. W., 993.

In Kasey v. Fidelity Trust Company, 131 Ky., 604, 115 S. W., 737, this court undoubtedly recognized by implication, the right of one to contest a will notwithstanding a previous acceptance of benefits thereunder. In that case, however, the contesting beneficiary was the sole heir-at-law of the testator and had given to the executor express written authority to pay certain special legacies, and had herself accepted the property devised to her. The court held that under this state of facts she could not contest the will for mental incapacity of the testator, especially without returning what she had received.

In the well considered case of Stone v. Cook, 179 Mo., 534, 78 S. W., 801, 64 L. R. A., 287, it is said:

"The sum of the matter then is, that as a general rule one who has received a benefit under a deed, will or other instrument, cannot thereafter contest its validity; but the general rule is subject to this qualification: That if the benefit was received without a knowledge of his right to elect between the benefit so conferred and of his right to the property outside of the deed, will or other instrument, or if he was induced by fraud or deception to accept the benefit conferred by the instrument, he may revoke the election and contest the validity of the instrument and claim under the law, provided that innocent third persons will not suffer by a revocation, and

provided that there has been no unreasonable delay in exercising the right of revocation, and provided he pays into court the benefits received.''

It is here conceded that appellees accepted the one thousand dollars each, and under a misapprehension as to their legal rights; no one has suffered by their acceptance of the appointments; there has been no unreasonable delay in asserting their rights, and they have paid into court the sums so received by them. They are thus brought within the rule of the case mentioned, and are not estopped to contest the validity of the exercise of the power of appointment vested in Lewis Barrett by the will of his father.

The judgment is therefore affirmed.