In re Estate of Eleanor E. Brunt, Deceased.
Harris Trust and Savings Bank, as Executor of the Last Will and Testament of Eleanor E. Brunt, Deceased, Appellee, v. Helen Spurrier Allen, Appellant.

Gen. No. 36,773.

Heard in the second division of this court for the first district at the June term, 1933. Opinion filed March 6, 1934.

CHARLES E. McGUIRE, for appellant.

CHAPMAN & CUTLER, for appellee; RICHARD J. FRANKENSTEIN and CHARLES M. THOMSON, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Harris Trust & Savings Bank (hereinafter for convenience referred to as the executor) as executor of the estate of Eleanor E. Brunt, deceased, filed its final account in the probate court. Helen Spurrier Allen (hereinafter referred to as objector) filed objections thereto based on the manner of the distribution of the

estate among the several legatees named in the will. The probate court sustained the objections and ordered the executor to revise its final account. The executor appealed to the circuit court, where the cause was heard *de novo* and an order was entered by the court reversing the order of the probate court and confirming and approving the final account of the executor. This appeal seeks to reverse that order.

The testatrix, Eleanor E. Brunt, executed her last will and testament February 3, 1928. The paragraphs in the will pertinent to this appeal are those designated as articles 4, 7, 12 and 17.

Article 4 contains a bequest to Harris Trust & Savings Bank, as trustee, of "the sum of $23,000 to have and to hold the same upon the following trusts . . .," which trusts are thereinafter set forth.

Article 7 contains a bequest to Harris Trust & Savings Bank, as trustee, of "the sum of $20,000 to have and to hold the same upon the following trusts . . .," which trusts are thereinafter set out. The objector, Helen Spurrier Allen, is the chief beneficiary of the bequest set out in this article.

Article 12 reads as follows:

"I direct that the legacies in articles 4 and 7, respectively, *shall have precedence over* all other legacies and bequests in this will provided for and that the trust funds created in the said articles *shall be established in full* prior to the payment of any other legacies or bequests. I do further direct that the legacies in articles 4 and *8*, respectively, of this will provided for shall be paid by the executor hereof *in cash* or *in high grade securities at their fair market value.* All other legacies in this will provided for shall be paid by the executor hereof *in cash* or *in bonds* constituting a part of my estate at the time of my death, *to be delivered at their face value,* as the executor hereof *may deem proper* and for the best interests of my residuary estate." (Italics ours.)

The final account of Harris Trust & Savings Bank, as executor of this estate, shows among other things the following:

Article 4. Payment of $23,000 "in cash or securities at their fair market value" to Harris Trust & Savings Bank, trustee:

| | |
|---|---:|
| Ten shares American Telephone and Telegraph Company, common stock at $166.75.$ | 1,667.50 |
| Cash .................................. | 21,332.50 |
| | 23,000.00 |
| Less Illinois Inheritance Tax............... | 1,273.70 |
| | $21,726.30 |

Article 7. Payment of $20,000 "bonds at par value" and cash to Harris Trust & Savings Bank, as trustee:

| | |
|---|---:|
| Divers and sundry bonds set out in the report specifically, constituting a part of the estate at the time of the death of deceased, all at par value........................ | $19,000.00 |
| Cash .................................. | 1,000.00 |
| | 20,000.00 |
| Less Illinois Inheritance Tax............... | 814.16 |
| | $19,185.84 |

In addition to those provided under articles 4 and 7, by the terms of the will the testatrix left 13 other separate legacies or bequests in amounts varying from $150 to $10,000, aggregating $41,150. The payment of $20,000 cash or its equivalent to the legacy created under article 7 would have virtually exhausted the estate.

The objections of Mrs. Allen as beneficiary of the trust set up under the provisions of article 7 were the

following: (1) That the account did not carry out the terms of the will; (2) that the account did not contemplate payment of the proper legacy due to or for the use of the objector in accordance with the terms of the will; and (3) that, although the will specified that payment of the legacy in trust for the objector shall have precedence over all other legacies, and shall be established in full prior to the payment of any other legacies or bequests, except the legacy or bequest provided for in article 4 of the will, the final account presumes to cause said legacy to abate and to pay on other legacies and bequests a part of the assets of said estate, although such other legacies and bequests are specifically declared to be subordinate to the first and full payment of the legacy due under the will to the bank, as trustee, for the use of the objector.

Objector prayed that an order be entered directing the executor to revise and reform its account "in accordance with and for the purpose of carrying out the terms and intention of the last will and testament of Eleanor E. Brunt, deceased."

The executor filed an answer to the objections of Mrs. Allen, in which it denied (1) that the account as filed did not carry out the terms of the will; (2) denied that the account did not contemplate the payment of the proper legacy for the use of the objector under the terms of the will; and (3) denied the allegations contained in par. 3 of the objections and alleged that the legacy in trust for the benefit of the objector under article 7 has been paid in the manner contemplated by the will and has been given the preference provided for therein and prayed that an order be entered approving the final account.

Objector contends that the executor in establishing the trust fund for the legacy created under article 7, by allocating to it $19,000 par value bonds (market value $7,200) and $1,000 cash, acted contrary to the

clear intention of the testatrix as expressed in the first sentence of article 12, which directed that "legacies in articles 4 and 7 . . . shall have precedence over all other legacies and bequests . . . and that the trust funds created in such articles shall be established in full prior to the payment of any other legacies or bequests"; that this preference cannot be destroyed by any action of the executor, the effect of which would be to reduce the value of her legacy under article 7 from $20,000 to $8,200; that there were sufficient funds in the estate to pay her legacy the full amount of $20,000 cash or its equivalent; and that it should have been so paid, notwithstanding that such payment by the executor would have left practically nothing to satisfy the 13 other legacies.

The executor's theory is that the last will and testament of the deceased did not require the executor to pay the legacy bequeathed to objector under article 7 of the will $20,000 cash or its equivalent; that the report and account is in all respects in fulfillment of the terms of the will of the deceased in the matter of the establishment and payment of the legacy provided in the will in favor of objector; that the only specific direction under the terms of the will to pay any of the legacies in cash or its equivalent was that contained in the second sentence of article 12, which stated: "I do further direct that the legacies in articles 4 and 8 (article 8 was eliminated by a codicil) . . . shall be paid by the executor . . . in cash or in high grade securities at their fair market value"; and that in the exercise of a proper and reasonable discretion it established the trust fund created under article 7, pursuant to the intention of the testatrix as indicated in the third sentence of article 12, which directed: "All other legacies . . . shall be paid . . . in cash or in bonds constituting a part of my estate at the time of my

death, to be delivered at their face value as the executor hereof may deem proper. . . ."

The only witness in this proceeding in the circuit court was Chas. J. Roubik, Jr., who testified that he was assistant secretary of the Harris Trust & Savings Bank; that the administration of the estate was under his supervision; that the trust under article 4 was established by allocating to it 10 shares of American Telephone & Telegraph Company stock at the market value of $1,667.50 and cash in the amount of $21,332.50, making a total of $23,000; that the trust under article 7 was next established by the allocation to it of 19 bonds of $1,000 par value each, and cash in the amount of $1,000; that the reason why the executor established the trust under article 7 by allocating bonds at par rather than securities at their market value was that article 12 of the will gave the executor the right to do so, and because its officers believed it to be the proper thing to do in order to spread out what property was left as far as they could make it go over the remaining legacies; and that by establishing the trust under article 7, with the appropriation of $19,000 in bonds at their par value and $1,000 in cash, they were then able to pay by the sale of the bonds that were left a trifle over 35 cents on the dollar to the remaining legatees.

The determination of the questions presented on this appeal must necessarily be controlled almost entirely by the interpretation given to article 12 of the will. That article must be construed in the light of recognized and well defined principles of law. The intent of the testator should control. Such intent should be ascertained, if possible, from the four corners of the will. All words in the will should be given their ordinary meaning in the absence of something specifically indicating the contrary. All provisions of the will should be given effect, if possible, and in determining the intention of the testatrix the question presented is

not what the deceased intended to say, but rather what was the intention of the deceased as reflected by what she did say. (*Hawthorne v. Ulrich,* 207 Ill. 430, 434; *In re Mizener's Estate,* 262 Pa. 62, 105 Atl. 46.)

The first sentence of article 12 unquestionably accorded preference to the legacies in articles 4 and 7, to the extent of the specific direction that they be established in full prior to payment of any other legacies or bequests. Up to this point articles 4 and 7 were on a parity, and if the testatrix had stopped with this sentence it would have been the executor's duty to pay both legacies in full in cash. However, she did not stop there. Although she had coupled articles 4 and 7 in the first sentence of article 12, in the following sentence she separated them, specifically directing that the legacy under article 4 be paid in cash or its equivalent. It is futile to argue that the testatrix clearly intended, by reason of the preference expressed in the first sentence, that the legacy provided for in article 7 should also be paid in full in cash or its equivalent the same as the legacy under article 4, and exactly as if it had been included in the second sentence with article 4. It appears to us that the testatrix deliberately and intentionally differentiated and distinguished between them. However, if testatrix's intention as to the manner of payment or establishment of objector's legacy had not been expressed beyond the second sentence of article 12, and even though article 7 was not included in that sentence, still she would obviously have been entitled to the payment of her legacy in cash. But testatrix did go further. After singling out the legacy under article 4 and specifically directing that it be paid in cash or its equivalent, she then directed in the third sentence of article 12 that "*all other legacies*" shall be paid by the executor "in cash or in bonds constituting a part of my estate at the time of my death, to be delivered at *their face value* as

the executor hereof may deem proper and for the best interests of my residuary estate.'' There was no residuary estate because of depreciation in the value of the securities.

It must be presumed that testatrix, a woman of considerable property consisting principally of stocks and bonds, well knew the meaning of ''market value'' and ''face value'' when she used those terms in her will.

The preference specified in the first sentence of article 12 has been given effect by the full establishment (payment) of both the article 4 and the article 7 legacies, in manner and kind precisely as directed and authorized under the second and third sentences of article 12, prior to the payment of any other legacies or bequests.

Under the will the executor was allowed no discretion as to article 4, but was specifically directed to establish the legacy created thereunder in cash or its equivalent, which it did. After the establishment of that legacy the executor had in its possession assets consisting of cash and securities of a total cash value of $22,705. It was confronted with the proposition of establishing the $20,000 legacy under article 7 and paying 13 other legacies aggregating $41,150. It is readily apparent that if the legacy under article 7 were established in full in cash or its equivalent, the assets of the estate would have been almost depleted, leaving but $2,705 for distribution to the 13 other legatees.

A few of the beneficiaries under the various articles of the will and codicil were close friends or servants of the deceased, but by far the larger number, and those to whom the bulk of the estate was bequeathed, were relatives in whom the testatrix by the terms of the will evinced a tender and devoted interest. An inspection of the 18 articles of her original will, and the five articles of the codicil, executed February 18, 1930, re-

veals the care and consideration she bestowed upon the general plan of her benefactions.

The executor is manifestly right in its assertion that, except as to the legacy provided under article 4, it was clothed with a broad and reasonable discretion to make a fair and just distribution of the assets remaining in the estate among all the other legatees.. As heretofore noted it recognized its duty to grant priority to the legacy under article 7, and established it in full. It was apportioned $19,000 par value bonds and $1,000 in cash. In our opinion the executor was justified in this allocation, not only under the third sentence of article 12, which granted it discretion to pay all legacies except that created under article 4 in cash or in bonds that were part of the testatrix's estate at the time of her death at their face value as it "may deem proper," but also under article 17 of her will, which provides:

"Except as hereinabove otherwise expressly provided, the Trustee hereunder and the Executor hereof are hereby, respectively, authorized to pay and satisfy the bequests and legacies in this Will provided for, and to make provision and distribution of my residuary estate and of the several trust funds hereinabove created, in securities, property, and/or cash, and in such proportions thereof as the Executor or the Trustee, as the case may be, shall determine to be most equitable, and the value which either the Trustee or the Executor shall place on any property constituting any part of my estate or any of the said trust funds, shall be final and conclusive upon that subject."

To put upon this will the construction which objector asks is to disregard entirely testatrix's general scheme of bequests, as well as the plain intent of the language used by her in articles 12 and 17, empowering the executor to use a sound and proper discretion in the administration of the estate and the distribution of its assets, except as specifically directed concerning ar-

ticle 4. The executor owed a duty to every beneficiary of a legacy or bequest under the will, and we think that it fully recognized its responsibility and discharged its obligation by its method and manner of distribution. By establishing objector's legacy in full, as it did, it was enabled to pay all of the other legacies and bequests under the will to the extent of about 35 per cent. It sufficiently complied with the directions of testatrix in the first sentence of article 12, and at the same time carried out her intention as expressed in plain language in the last sentence of article 12, and in article 17. If any other course had been followed the result would have been directly contrary to the plain provisions written into her will by the testatrix.

If meaning is given to every word and clause of the will, considered in the light of the general purpose and intention of the testatrix as reflected throughout the will, the conclusion is irresistible that her intention was effectuated by the method of distribution adopted by the executor. It is obvious, therefore, that not only has the executor fairly interpreted the intention of the testatrix, but it has strictly complied with all of her directions and exercised the discretion in the distribution of the assets of the estate that it was contemplated by her that it should.

Objector cites *Wood v. Wood*, 276 Ill. 164, as sustaining her contentions, but we believe that the contrary is true and that our interpretation of the will is supported by the following language appearing on pp. 170 and 171 of that opinion:

"A construction which arrives at a result . . . inconsistent with the general scheme of the testator for the disposition of his property will not be adopted unless the language used imperatively requires it and can be given no other reasonable construction."

Some other questions were raised by counsel in their argument, most of which, however, are practically disposed of by what we have already said. As to the

points to which no reference has been made, we need only say that they have not escaped our attention but on full consideration we do not find them of sufficient importance to call for special discussion.

We are of the opinion that the record is free from material error, and the order of the circuit court confirming and approving the executor's final account is affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.