## Caroline Benneson *et al.*

*v.*

## Jonas B. Aiken.

*Filed at Springfield March 28, 1882.*

1. Delivery of a deed. A deed may be delivered, although not actually passed over from the hands of the grantor to the hands of the grantee. No particular form is necessary to constitute a delivery. It may be by acts without words, or by words without acts, or by both. Anything manifesting the intention of the parties that it shall presently become operative and effectual, constitutes a sufficient delivery.

2. Where a deed was made and acknowledged by a husband and wife, for lands of the wife, and placed by the wife in the husband's hands, leaving him to determine when, if ever, it should be delivered, and he failed to exercise that discretion in his wife's lifetime, and the wife, after the date of the deed, built a large house on the premises, in which she and her husband resided until her death, after which he passed over the deed to the grantee: *Held,* that the deed never took effect for want of delivery in the lifetime of the wife, and that upon her death his authority to deliver was revoked.

3. Conveyance—*inuring of after acquired title.* A quitclaim deed of a party to land without any covenants of warranty, will not pass an after acquired title by the grantor.

Writ of Error to the Circuit Court of Adams county; the Hon. S. P. Shope, Judge, presiding.

Mr. William H. Benneson, for the plaintiffs in error:

When a grantor makes an absolute delivery of a deed to a stranger for the use of the grantee, parting with all control

over it, and the deed is beneficial on its face to the grantee, an acceptance by the grantee will be presumed. *Wiggins* v. *Lusk,* 12 Ill. 132; *Union Mutual Ins. Co. et al.* v. *Campbell,* 95 id. 267; *Rivard et al.* v. *Walker et al.* 33 id. 413. And further, as to delivery of deeds, see *Bryan et al.* v. *Wash et al.* 2 Gilm. 557; *Souverbye* v. *Arden,* 1 Johns. Ch. 256; *Masterson et al.* v. *Cheek et al.* 23 Ill. 72; *Morrison* v. *Riley,* 22 id. 610; *Rawson* v. *Fox et al.* 65 id. 200.

Messrs. MARSH & McFADON, for the defendant in error:

Under the law in force in 1866, to make a wife's conveyance of her real estate valid, her husband was required to join with her in its execution and delivery.

The date of the delivery of a deed is its true date, no matter when it bears date or was acknowledged. *Bryan* v. *Wash et al.* 2 Gilm. 557; *Whitman et al.* v. *Henneberry,* 73 Ill. 114; *Whittaker* v. *Miller,* 83 id. 381; *Blake* v. *Fash,* 44 id. 305; 3 Washburn on Real Prop. (3d ed.) 257, sec. 23. And see, also, upon the question of delivery, *Bryan* v. *Wash,* 2 Gilm. 565; *Wiggins* v. *Lusk,* 12 Ill. 135; *Union Mutual Ins. Co.* v. *Campbell,* 95 id. 281; *Herbert et al.* v. *Herbert,* Breese, 359; *Schœnberger's Executors* v. *Zook,* 34 Pa. St. 28; *Jackson* v. *Cleveland,* 15 Mich. 10; *Gold* v. *Day,* 94 U. S. 412.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

While the record in this case is somewhat voluminous, yet the principal, and indeed the only, question of any importance is, whether a certain deed, made May 16, 1866, by Charles A. Savage, and Elvey W. Savage, his wife, purporting to convey the premises in question to Anna Wells, was delivered.

It appears that Charles A. Savage married Elvey Wells in 1843. Levi Wells, the father of Mrs. Savage, died in 1859, intestate, leaving Anna Wells, his widow, and three daughters, Caroline Benneson, Ann E. Keeler, and Elvey Savage, as

his only heirs.    At the time of his death Levi Wells owned in fee 160 acres of land adjoining the corporate limits of the city of Quincy.    In December, 1859,˙the three daughters of the deceased, by quitclaim deed, partitioned the quarter-section of land among themselves.    The premises described in the deed of May 16, 1866, is that portion of the quarter˙ which fell to Elvey Savage in the division.    Charles A. Savage failed in 1857, and has remained insolvent since that time. In 1861 he conveyed, by quitclaim deed, his wife not joining in the deed, the premises to Anna Wells.    On the 16th day of May, 1866, Savage and his wife executed and acknowledged a deed purporting to convey the premises to Anna Wells. Elvey Savage never had any children, and on the 19th day of July, 1873, she died intestate.    If the deed of May 16, 1866, was delivered, of course she at the time of her death had no interest in the premises.    If it was not delivered, then she died seized of the premises, and her husband inherited one-half of the same, which was liable to˙be reached by the bill filed by complainant.    It is not claimed that there was any actual delivery of the deed to Anna Wells before the death of Elvey Savage.    Indeed, the proof shows that she had no knowledge of the existence of the deed until after her daughter's death.

After the deed was signed and acknowledged by Savage and his wife, Savage took the instrument and placed it in a safe in his office in Quincy, where it remained until after the death of his wife.    Mr. Savage, in his evidence, testified that the delivery of the instrument, and the time when the delivery should be made, were left entirely with him.    On his re-direct examination he testified as follows :

Int. 1.    "In your cross-examination something has been said of conversations in connection with that deed of 1866. If Mrs. Elvey Savage attached any conditions or gave you any directions as to when that deed should be delivered or become her deed, except so far as it was left optional with

you to determine, please state what directions or conditions she did attach or make about the delivery of the deed."

A.   "She never left any directions."

Int. 2.   "Then I understand, at all times prior to her death, and after she signed that deed, you had, with her consent, the full power to determine when, if ever, that deed should be delivered."

A.   "I did."

These are the leading circumstances under which the deed was signed by Savage and his wife, and placed in the possession of Savage, and it is contended that as Savage had no interest in the land, it being the sole property of the wife, he is to be regarded in the transaction as a stranger, and where a grantor places a deed in the hands of a stranger, with directions to deliver the same at his pleasure to the grantee (the deed being beneficial to the grantee on its face), it is a good delivery.   A delivery is essential to the validity of every deed, but a deed may be delivered, although not actually passed over from the hands of the grantor to the hands of the grantee.   Such being the case, it is often a question of much difficulty to determine whether a deed has been delivered or not.   In *Bryan* v. *Wash*, 2 Gilm. 557, it was held that no particular form is necessary to constitute a delivery. It may be by acts without words, or by words without acts, or by both.   Anything which clearly manifests the intention of the grantor and the person to whom it is delivered, that the deed shall presently become operative and effectual, that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient delivery.

There is no evidence in this record that it was intended by the grantors in the deed that it should become operative, and vest the title in the premises in the grantee named in the deed.   Mrs. Savage, the owner of the fee, according to the evidence, left it to the discretion of her husband to determine

when, if ever, the deed should be delivered, and as he failed to exercise that discretion until 1873, after the death of his wife, his act was then a nullity. The conduct and acts of Mrs. Savage and her husband after the deed was made, which are proper to be considered, seem to establish beyond a doubt that there was no intention on their part to part with the title to the premises. In 1866 and 1867 a large house was erected on the premises by Mrs. Savage. She and her husband moved into this house and occupied it, exercising all the acts of ownership over the property after the deed was made as before, and this continued until the death of Mrs. Savage. These acts are inconsistent with the theory that Mrs. Savage intended that the deed of May, 1866, should be regarded as a conveyance of the property from the time she signed and acknowledged the instrument and placed it in her husband's hands. It is, perhaps, true that the presumption is, in the absence of proof, that a deed is delivered at its date; but that presumption can have no bearing here, as the evidence shows that the deed was not delivered until after the death of Mrs. Savage, when a delivery could bind no one. Had this deed been delivered to Mr. Savage to hold for the benefit of the grantee, and to be passed over to her at some definite time, the title to the land would no doubt have passed; but such was not the case. The deed was placed in the hands of Savage, with power in him to determine when, if ever, it should be delivered. This power he never exercised until it was revoked by the death of his wife, and no title passed by the instrument.

There is another view that may be taken of the transaction. Mrs. Savage could not convey the land unless her husband joined in the execution and delivery of a deed of conveyance. He and his wife were joint grantors. The possession of the deed after it was made out was a joint possession. Under such circumstances no title could pass, for the reason that the grantors retained the custody and possession

of the instrument. If a man signs and acknowledges a deed, but makes no delivery, merely retains it in his possession until his death, when it is found among his papers, no one would pretend that such an instrument would pass title, and yet there is no substantial difference between such a transaction and the one under consideration.

It is also claimed that the title which Savage inherited upon the death of his wife inured to Anna Wells, under a deed he had made to her in 1861. The deed he made in 1861 was a mere quitclaim deed, containing no covenants whatever, and under the ruling of this court in *Holbrook* v. *Debo*, 99 Ill. 372, a subsequently acquired title would not pass to the grantee.

Some minor objections have been made to the rulings of the court, but we see no merit in them.

The decree of the circuit court is correct, and it will be affirmed.

*Decree affirmed.*