Elizabeth Biggins and John Ward v. Daniel Lambert.

Gen. No. 4.327.

1. DELIVERY OF DEED—*when, complete.* The delivery of a deed is complete when the grantor parts with all control and dominion over the same, with the intention that the title shall pass to the grantee.

2. POWER OF APPOINTMENT—*construction of.* A power of appointment as follows: "I hereby ordain that my wife, Catherine Ward, shall provide before her death out of the above described property for my two children,"—leaves the amount to be provided for each child, respectively, discretionary, and an equal division between such children is not required.

Proceeding to remove conveyance out of the way of execution. Error to the Circuit Court of Will County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

BLACK & BLACK and J. W. DOWNEY, for plaintiffs in error.

J. L. O'DONNELL, for defendant in error.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is a bill in chancery to remove a conveyance out of the way of an execution issued from the Will county Circuit Court on a judgment at law in favor of defendant in error, Daniel Lambert, and against John Ward, on the grounds that said conveyance was made with the intent to defraud defendant in error and to hinder and delay him in the collection of his debt. The Circuit Court sustained the bill and entered a decree in accordance with the prayer of the bill, and plaintiffs in error bring the record here and ask a reversal of the decree.

On the 8th of April, 1901, Daniel Lambert, the defendant in error herein, commenced an action in tort against John Ward, who was made co-defendant in the proceedings here under review, with his sister, Elizabeth Biggins, to recover damages for the alleged seduction and debauching of his daughter, Catherine Lambert. This action resulted in a judgment in the Circuit Court of Will county on the 26th day of October, 1901, against the defendant, John

Ward, for $5,000 damages and cost of the suit. An execution was sued out on this judgment on the 26th day of October, 1901, and was afterwards levied on the real estate in controversy in this suit.

Daniel Ward, the father of plaintiffs in error, was originally the owner in fee of the real estate in question; he died testate on the 24th day of October, 1897. By his will certain other real estate belonging to the testator was devised to his children other than John and Elizabeth, and then the third clause of the will which disposes of the real estate involved in this suit is as follows:

" 3rd. I give and bequeath to my wife, Catherine Ward, the real estate described as W. ½ S. W. ¼, Sec. 5, 40 acres, and the W. ½ N. W. ¼, Sec. 5, 81 14-100 acres, and all appurtenances on the premises of every kind, including all the personal property, household furniture, and farm implements and live stock, grain, corn, oats, hay, straw, fowl, all cash money on hand in whosoever hands it may be, and all notes. The real estate above described is in Town of Lockport, 36, Range 10, East, Will County, Illinois. I hereby ordain that my wife, Catherine Ward, shall provide, before her death, out of the above described property, for my two children, John Ward and Elizabeth Biggins.

4th. I ordain and appoint my wife, Catherine Ward executrix of this, my last will and testament, to serve without bonds."

It was conceded on the hearing below, that the description of the first or 40-acre tract, in the third clause of the will, was erroneous; that it should have been N. ½, W. ½, S. W. ¼, Sec. 5, 40 acres, as correctly given in the bill.

In pursuance of the direction and power conferred on Catherine Ward, widow and executrix of Daniel Ward, on the 12th day of January, 1900, she made and executed to John Ward a warranty deed conveying to him all of the real estate devised to her under the third clause of the will. Among other items of personal property which passed to the widow under the third clause was a note for $1,554.38, known in this record as the "Norton" note, dated September 28, 1897, due three years from date, and bearing 5 per cent interest. On the 16th day of February, 1899, the executrix

endorsed and delivered this note to her daughter, Mrs. Biggins. At the time this note was delivered to Mrs. Biggins her mother said she had some doubt about this note being paid, and in case it should not be paid she did not want it to count against Lizzie's share of the estate.

There is evidence tending to show that Mrs. Biggins received considerable sums of money from her mother out of the estate of Daniel Ward. Several witnesses testify that Catherine Ward and plaintiffs in error stated that the estate matter between John and his sister had been settled; that Mrs. Biggins had received either $3,500 or $5,000 in money and John took the real estate. After the deed to John was executed it was placed by him with the knowledge of Mrs. Biggins in the custody of Mr. Downey, who was the attorney for both parties, who was to hold the deed and not have the same recorded until the estate matter between John and his sister was adjusted. On the 10th day of May, 1900, while the deed was in Mr. Downey's possession, Mrs. Ward died. On the 11th day of March, 1901, John Ward, Mrs. Biggins and her husband went to the office of Mr. Downey in Joliet and John Ward then executed a deed to her of all of the real estate in question, being 120 acres, for the express consideration of $8,000. At the same time he made a bill of sale of all his personal property to her, consisting of 2,000 bushels of corn in crib, 2,000 bushels of oats, twelve tons of hay in barn, fifteen tons oat straw, five head of horses, thirty-three head of cattle, twenty-five head of hogs, all for the express consideration of $3,000. The farm and the personal property thereon included in this bill of sale was all the property of every kind and character that John Ward owned at this time, and if the conveyance is sustained any execution against his property cannot be collected.

The evidence shows that at the time of the execution of the deed and bill of sale Mrs. Biggins paid John Ward $1,900 currency, most of which was the proceeds of the "Norton" note. After the deed was executed Mr. Downey was instructed to cause the deed from Catherine Ward to

John and John's deed to Mrs. Biggins to be recorded and then forwarded to Mrs. Biggins. It is the deed from John Ward to his sister for the 120 acres of land that has been set aside by the decree of the Circuit Court, which decision of the court in setting aside this deed is brought in question by the present writ of error.

It is contended that the deed conveying this real estate from Catherine Ward to plaintiff in error, John Ward, was never delivered to John Ward and hence no title passed to him, until the time of the execution of his deed to his sister on the 11th of March, 1901. This contention cannot be sustained. The evidence shows that the deed was in fact delivered to the grantee on the day of its date, and the fact that the deed was not recorded but lodged with Mr. Downey pending some supposed settlement between the grantee and his sister did not affect the question of the delivery to the grantee. Mrs. Catherine Ward, the grantor, had parted with all control and dominion over the deed with the intention that the title should pass to the grantee, and this was all that was required to constitute a valid delivery. Provart v. Harris, 150 Ill. 40; Douglas v. West, 140 Ill. 455; Dagley v. Black, 197 Ill. 53. The argument of plaintiffs in error that the deed was never delivered until the day John Ward made his deed to his sister is unsound. If the deed had not been delivered before this date, certainly no act of the grantee after the death of the grantor could complete the transaction and make the delivery effective. Benneson v. Aiken, 102 Ill. 284; Morris v. Caudle, 178 Ill. 9. Conceding all that the evidence of plaintiffs in error tends to prove we think the Circuit Court did not err in holding that the deed was delivered to John Ward at the time it was executed.

It is next contended by plaintiffs in error that under the third clause of the will of Daniel Ward, Mrs. Biggins became entitled to one-half interest in the property, real and personal, devised to her mother, and that for that reason the decree of the Circuit Court is erroneous in not protecting Mrs. Biggins' interest in one-half of the real estate.

This contention is based on the assumption that by the concluding sentence of the third clause of the will of Daniel Ward the power of appointment there vested in Catherine Ward required that she should make an equal division between John and his sister, Mrs. Biggins. The will reads as follows: " I hereby ordain that my wife, Catherine Ward, shall provide, before her death, out of the above described property, for my two children, John Ward and Elizabeth Biggins." It will be observed that there is nothing said in the will as to how the widow of John Ward was to provide for the two children out of this property. The amount to be appointed to each is left entirely to the discretion of Catherine Ward.

The doctrine of illusory appointment as the same existed in England prior to the passage of I Will. 4 C. 46, does not now and never did obtain in Illinois. In the recent case of Hawthorn v. Ulrich, 207 Ill. 430, our Supreme Court, after examining the reason upon which the old and discredited doctrine of illusory appointment rested, expressly repudiate it in the following language: " In view of the fact that this doctrine was long discredited and reluctantly enforced by the English court of equity until the steadily increasing dissatisfaction was recognized by a statute entirely forbidding its application, and in view of the further fact that no case, as it seems, can be found in which it has ever been applied by an American court, we are of the opinion that in the light of authorities above cited from Pennsylvania and other states, and in consideration of the reasons which make against the rule and its enforcement, we would not be warranted in engrafting this doctrine of illusory appointment upon the laws of Illinois."

Even if the doctrine did prevail in this jurisdiction, and if it be assumed the " Norton " note was all that Mrs. Biggins received, still $1,554.38 would hardly be held to be an illusory or nominal sum. Another sufficient answer to the position of plaintiffs in error on this point is that this is not a bill to impeach the execution of the power of appointment under the will. Mrs. Biggins is not entitled to any

relief under the pleadings in this case, even if she was otherwise in a position to attack the appointment, which, as we have seen, she is not.

The next most serious contention is, that the decree of the court is contrary to the evidence. We do not deem it necessary to enter into a discussion of the facts and circumstances bearing upon the good faith of this conveyance. A reference to a few of the more important facts will suffice : On the very day those conveyances were made and at the same time that plaintiffs in error were in Mr. Downey's office making the deed and bill of sale, Catherine Lambert, who had been seduced and debauched by John Ward, was in another lawyer's office in the same city filing a complaint against John Ward charging him with bastardy. A warrant was issued for his arrest but not served for nearly a month afterward. John Ward was a farmer; he owned and was in possession of a valuable farm worth not less than $8,000; he had on hand his crops grown the year before, consisting of corn, oats, hay and some straw; he had live stock consisting of horses, cattle and hogs; suddenly he sells or pretends to sell to his sister the farm and all the personal property, leaving himself nothing whatever. No reasonable explanation is offered for this unusual transaction. It is sworn to by Mrs. Mary Ward, a sister-in-law to John and Mrs. Biggins, that the parties said the deed and bill of sale were made to keep Kittie Lambert from getting anything from John, and Kittie Lambert swore that she had called on him for a settlement before this. It is shown that Mrs. Biggins knew nothing about the quantity, value or character of the personal property she was buying. She admits she could not tell within a thousand dollars of the value of the property embraced in the bill of sale; no measurements, no inspection or examination of the property is made before the alleged sale. They did not go to the farm where the subject-matter of the trade was, but instead they went to a lawyer's office and had the papers drawn up. No note or other evidence of indebtedness was given by Mrs. Biggins for

the unpaid purchase money; in fact, no talk was had of any balance to be paid and we are left to infer that John Ward was selling his sister $3,000 worth of personal property and $8,000 in real estate for $1,900. These facts characterize this transaction as fraudulent. That John Ward in his hasty effort to divest himself of all the visible property he had was actuated by a desire to shield himself from the financial consequence of his conduct towards the Lambert girl, cannot be doubted, and his sister, who was willing to aid him in his fraudulent and unlawful purpose by becoming the grantee of $11,000 worth of property for $1,900, cannot screen herself behind the claim of an innocent purchaser, since from the very nature of the transaction she must have known of the fraudulent purpose of her brother, which is all the law requires to avoid the deed as to her.

The decree is right and is accordingly affirmed.

*Affirmed.*