ELIZABETH BIGGINS

· *v.*

DANIEL LAMBERT.

*Opinion filed February 21, 1905.*

1. WILLS—*provision of will construed as not requiring widow to make equal provision for children.* A provision of a will leaving certain described real estate and all personal property to the widow, with directions for her to provide, before her death, for two named children, "out of the above described property," does not require her to divide the property equally between them, nor preclude her from giving personal property to one and land to another.

2. DEEDS—*when grantee is not entitled to relief as against third party.* On bill to set aside a deed as in fraud of the rights of a judgment creditor of the grantor, if the evidence tends to show that both grantor and grantee participated in the fraud, the grantee, as against the judgment creditor, is not entitled to protection to the extent of the consideration paid by her for the property.

3. APPEALS AND ERRORS—*effect where judge from whom change of venue was taken hears case in Appellate Court.* The fact that the judge from whom a change of venue was taken on the ground of prejudice afterwards sits as a member of the Appellate Court when the case is heard there, is not ground for reversing the judgment of the Appellate Court.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. JOHN SMALL, Judge, presiding.

W. P. BLACK, and J. W. DOWNEY, for appellant.

J. L. O'DONNELL, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the Second District affirming a decree of the circuit court of Will county setting aside, as fraudulent as to the rights of appellee, a certain deed from John Ward to Eliza-

213—40

beth Biggins, his sister, the appellant herein. The appellee had recovered in said circuit court a judgment for $5000 in an action of tort against the said John Ward for the seduction of his daughter, Catherine Lambert. Execution having been issued on said judgment and returned unsatisfied, the appellee herein began this suit for the purpose of setting aside the deed above referred to and subjecting the property purporting to be conveyed by said deed to the satisfaction of said judgment. The relief prayed in appellee's bill was decreed by the circuit court, and on appeal to the Appellate Court that decree was affirmed and now this further appeal is prosecuted, it being contended by appellant that the circuit and Appellate Courts erred both in the application of law and the finding of facts.

The father of John Ward, Daniel Ward, originally owned the land here in controversy. He died October 24, 1897, leaving a last will and testament, by which he made certain devises to all his children except John and Elizabeth, the defendants in this suit. As to them, however, mention was made in the third clause of the will, which, together with the fourth clause, is as follows:

"*Third*—I give and bequeath to my wife, Catherine Ward, the real estate described as W. $\frac{1}{2}$ S. W. $\frac{1}{4}$, sec. 5, 40 acres, and the W. $\frac{1}{2}$ N. W. $\frac{1}{4}$, sec. 5, 81.14 acres, and all appurtenances on the premises of every kind, including all the personal property, household furniture and farm implements, and live stock, grain, corn, oats, hay, straw, fowl, all cash money on hand, in whosoever hands it may be, and all notes. The real estate above described is in town of Lockport, 36, range 10, east, Will county, Illinois. I hereby ordain that my wife, Catherine Ward, shall provide, before her death, out of the above described property, for my two children, John Ward and Elizabeth Biggins.

"*Fourth*—I ordain and appoint my wife, Catherine Ward, executrix of this my last will and testament, to serve without bond."

On January 12, 1900, Catherine Ward, the mother of appellant, at her home, executed to John Ward a deed to the west half of the north-west quarter and the north half of the west half of the south-west quarter of section 5, township 36, north, range 10, east of the third principal meridian, in the township of Lockport, Will county. It seems to have been conceded in the previous proceedings that the description given in this deed is the correct one and covers the same land sought to be described in the third clause of the will above referred to. However that may be, it is the deed afterwards executed by John Ward to Elizabeth Biggins, purporting to convey the land last described that is sought to be set aside. The deed from Catherine Ward to John Ward was not recorded until March 12, 1901. On March 11, 1901, John Ward and Elizabeth Biggins went to the office of their attorney, in Joliet, and there John Ward made to Elizabeth Biggins a bill of sale of all the personal property and the homestead, being the land in controversy, where John Ward had been farming since his father's death, the said personal property being estimated to be of the value of $3000. He also made and delivered to her a deed for this same land and as described in the deed to him from his mother, the expressed consideration being $8000, Elizabeth Biggins paying for all this property $1900 in cash, but giving no notes or any other evidence of indebtedness as to the balance of the purchase price. The deed from Catherine Ward to John Ward, which had never been recorded, was, and had been for some time, in the possession of the attorney in whose office the parties were, and who the next day had both the deed to John Ward and the deed to Elizabeth Biggins filed for record.

There is a conflict in the evidence as to when the deed executed by Catherine Ward to John Ward was delivered,—whether at the time of its execution or not until the 11th of March, 1901, when the deed of John Ward to Elizabeth Biggins was executed, it being contended on the part of

appellant that up to this time the deed to John Ward was being held in escrow by his attorney. We deem it unnecessary for us to enter upon a consideration of this question, as, under the view we take, that question is not vital to our decision.

It is first contended by appellant that "the devise, in the third clause of the will of Daniel Ward, of the real estate involved in this suit, to Catherine Ward, imposed upon the land in her hands a trust in favor of John Ward and Elizabeth Biggins," and it is insisted that the deed of John Ward to Elizabeth Biggins, on this theory of the case alone, must be sustained, at least to the extent of a one-half interest in the lands, the equitable title to which, it is said, was at the time in appellant under the provisions of her father's will. For the purpose of this argument it may be conceded that Catherine Ward did take the property devised to her in her husband's will burdened with the trust of making provision therefrom for the children John and Elizabeth, but after this concession there is nothing in the will or in the authorities cited by appellant to indicate that John and Elizabeth should receive equal shares of this property or that the land should be equally divided between them. In clauses of the will preceding the one set out herein the testator bequeathed to certain children bodies of land of different extent, and there is nothing to indicate, even if it be said that it was the testator's intention that the land here in controversy should eventually go to his children John and Elizabeth, that they should participate equally therein. The testator left considerable personal property, which, under the third clause of the will, went to the widow, Catherine Ward. Among the items of personal property so left was a note for $1554.38, which, with three years' interest thereon, the evidence shows the widow gave to and the same was collected by Elizabeth Biggins. There is also evidence tending to show that Catherine Ward did provide, out of the property left her by her husband, for the children Elizabeth and John, and by which

provision Elizabeth was to receive, or had received, her share in money and John was to have the farm, and in accordance with that provision the farm was deeded to John by his mother. If the chancellor before whom the case was tried believed the evidence introduced on behalf of appellee, he was justified in believing that there was an arrangement to this effect, and if so, then appellant's position that the property devised in the third clause of the will was burdened with a trust provision for said children may be conceded and still the decree of the lower court is not subject to attack on the ground that the court misconstrued the clause of the will in question, for there is nothing in that clause from which the inference can logically be drawn that it was incumbent upon Catherine Ward to provide, out of the means left her, shares similar in nature and amount for the two children named in said clause. If Catherine Ward considered it better that the land should go to John and that Elizabeth should receive her share in money, as the evidence tends to show the division was made, under the will she had a right to so divide the estate; and if the chancellor believed, from the evidence, that after such division had been made and John Ward had become invested with the title to the land in question he fraudulently conveyed the same to his sister, Elizabeth, who was also guilty of complicity in said fraud, then the decree is not erroneous.

It is further contended by the appellant that the evidence fails to show any guilty intent or knowledge on the part of Elizabeth Biggins, or even any fraud on the part of John Ward, as to this conveyance, each of which is necessary to be shown in order to impeach and set aside the deed in question. In the consideration of this point it is not necessary that we set out the evidence tending to support the findings of the chancellor as to the existence of fraud. We have carefully reviewed the evidence presented by the abstract furnished us. It is very conflicting. There is evidence which, if believed by the chancellor, amply justifies the conclusions

reached by him. He saw and heard the witnesses, and had much better opportunity. for judging as to the weight that should be attached to the testimony of the various witnesses than have we. Under such circumstances the rule is well settled that this court will not disturb the findings of the chancellor unless manifestly and palpably wrong. We can not say, from the evidence before us, that the conclusions .reached by the chancellor are manifestly erroneous. Leaving out of consideration the conflicting statements of the witnesses, many circumstances about which there is no question appear that of themselves are strong badges of fraud.

Appellant also contends that the conveyance should in no event be set aside for more than the excess of the value of the property over the consideration actually paid, on the theory that, as to appellant, the conveyance cannot be held to be, at most, more than constructively fraudulent. As we have said, there is evidence, in our judgment, tending to establish guilty knowledge or intent on the part of appellant, and if she participated in the fraud then she cannot be afforded any relief, and while the transfer was void as to third parties, yet as between the parties to the transaction it will be regarded as binding. 14 Am. & Eng. Ency. of Law, (2d ed.) 273.

Finally, it is suggested that because a change of venue in the circuit court was taken from one judge on the ground of prejudice, and that same judge afterwards sat as a member of the Appellate Court before whom this case was taken, that was prejudicial error. We do not think so. The Appellate Court was composed of three judges, at least two of whom were not subject to the objection made.

Upon a review of the record before us we find no reversible error, and the judgment of the Appellate Court is affirmed.               *Judgment affirmed.*