[Civ. No. 2378.  Fourth Appellate District.—June 13, 1940.]

ELRA GREENLEES BERDAN, Appellant, v. CEDRIC HARRISON BERDAN et al., Respondents.

Luce, Forward, Lee & Kunzel for Appellant.

Gray, Cary, Ames & Driscoll and John M. Cranston for Respondents.

GRIFFIN, J.—This is an appeal by the plaintiff and appellant from a judgment in favor of defendants and respondents. The case involves the construction of an agreement in the form of a letter, which letter was written and signed January 2, 1935, by Elra A. Berdan (since deceased), father of appellant Elra Greenlees Berdan and respondent Cedric Harrison Berdan. The typewritten letter, directed to appellant, reads in part as follows:

"Dear Son:

" . . .

"This leads me to tell you something of a personal nature and I hope you will understand and appreciate what I have done. A year or more ago I tho't is necessary to make a new will which I did. By the terms of this will I leave all real and personal property to your Mother with the exception that she is to give you and Harrison an $100.00 if I should pass out before she does. You will understand that Mother and I are getting along in years and neither of us is therefore able to earn anything and therefore it will be my pleasure to provide for Ada to the extent of my ability. If I should pass out before your Mother of course she will leave all she possess, when it comes her her time to pass out, to YOU AND HARRISON ONLY. Harrison expresses himself as being perfectifically satissfied with what I ahve done and I hope you will understand my purpose and action in protection your Mother as best I can and I hope my action will be understood and appreciated by you as it was by Harrison . . .

"As this is a personal letter and getting rather long I will close and send this letter to your place of business and you can use your own judgment' as to whether or not to make mention of it . . .

"Sincerely yours,

(Signed) "ELRA A. BERDAN
"DAD."

On the reverse side of the foregoing letter appears the following handwriting in ink: "Dad singed this with his signature and also 'Dad' below. The signature in case you might want to use it. Lawfully. Mother."

In January of 1935, the respondent was residing with his father and mother in San Diego. The appellant was, at the time the letter was written, residing in New York City. Ap-

pellant's father passed away in San Diego on January 12, 1936, leaving a will dated October 14, 1932, wherein he devised and bequeathed all his property to his wife, Ada Sherwood Berdan, with the exception of a bequest of $100 each to the appellant and respondent. Appellant's mother visited him and his family in New York during the fall of 1936. At that time on several occasions his mother stated to both appellant and appellant's wife, according to their testimony, that the respondent was being named as the executor in her will because he was familiar with her affairs, but that "he (Cedric) would see that everything would be divided equally". Appellant's mother passed away in San Diego on July 15, 1937. By her will, which was dated November 2, 1935, she left everything to the respondent with the exception of $200, which was bequeathed to the appellant. The inventory of the father's estate shows that the appraised value was $12,399.02, consisting mostly of stocks and bonds. The inventory further shows that the value of the property which the father held with his wife in joint tenancy at the time of his death was $20,739.39. The inventory of the mother's estate shows that the property in her estate was appraised at $7,131.11, and further shows that the value of the property which was held by her and the respondent in joint tenancy was $21,266.58. No evidence was introduced by respondent, and the court rendered a judgment in his favor. The complaint prayed that a trust be declared in favor of plaintiff in one-half of the property which Ada Sherwood Berdan received from the estate of Elra A. Berdan. The answer substantially denied that the plaintiff was entitled to any relief. The court made a finding that "it is not true that either the said will or the said devise to Ada Sherwood Berdan was made in consideration of any agreement between Elra A. Berdan and Ada Sherwood Berdan wherein in consideration of said Elra A. Berdan so bequeathing and devising said property to Ada Sherwood Berdan, the latter agreed to execute a will whereby she would devise and bequeath all property so received by her from Elra A. Berdan to the plaintiff and defendant herein share and share alike, or in consideration of any agreement of similar import or in consideration of any agreement at all; that it is not true that there was any agreement either written or oral between Elra

A. Berdan and the said Ada Sherwood Berdan with respect to said property''.

Appellant now claims that the evidence does not support the finding, and that construing the letter, it is clear that it was the intent of the parties that Ada Sherwood Berdan should leave the property equally to the two sons. In support of this contention he cites *Staples* v. *Hawthorne*, 208 Cal. 578, 582 [283 Pac. 67], where it is said:

''It is well settled by the decisions of this court that any agreement to make a will in favor of a certain person is valid and binding upon the person making said agreement and that upon the death of the latter said agreement will be enforced against those who have succeeded to the property of said decedent contrary to the terms of said agreement.'' (See, also, *Estate of Rath,* 10 Cal. (2d) 399, 404 [75 Pac. (2d) 509, 115 A. L. R. 836]; *Stewart* v. *Smith,* 6 Cal. App. 152 [91 Pac. 667]; *Keefe* v. *Keefe,* 19 Cal. App. 310 [125 Pac. 929].)

Appellant argues that a beneficiary of a contract to make a will or leave property may sue for the enforcement of such a contract where the contract is made for his benefit, citing *Staples* v. *Hawthorne, supra,* 73 A. L. R. 1935.

Appellant contends that the entire instrument must be so construed as to give effect to the mutual intention of the parties and take into consideration the surrounding circumstances and the relationship of the parties, citing *Ogburn* v. *Travelers Ins. Co.,* 207 Cal. 50 [276 Pac. 1004], Civ. Code, secs. 1636, 1641, *Lemm* v. *Stillwater Land & Cattle Co.,* 217 Cal. 474, 480 [19 Pac. (2d) 785], *Tennant* v. *Wilde,* 98 Cal. App. 437, 444 [277 Pac. 137], and *Hansen* v. *D'Artenay,* 121 Cal. App. 746, 750 [9 Pac. (2d) 889]. It is appellant's contention that the letter, considered in connection with the declarations of the mother under the rules expressed in the cited cases, conclusively shows that the parties intended that the two sons were to be treated equally. (*Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432].) It is further argued that the doctrine of illusory appointment should be applied as in the case of *Barret's Exr.* v. *Barret,* 166 Ky. 411 [179 S. W. 396, L. R. A. 1916D, 493]. This doctrine was referred to in this state in *In re Sloan,* 7 Cal. App. (2d) 319, wherein the court stated at page 340 [46 Pac. (2d) 1007]:

" . . . the law is fairly well established that in the absence of controlling statute to the contrary, in exercising the power of appointment, no member of a class designated by the donor of the power may be entirely excluded by the donee of the power from at least a substantial participation in the distribution of the trust fund or estate."

Respondents contend: (1) That the claimed contract is not signed by Mrs. Berdan; (2) that neither the father nor the mother intended it to be a contract; (3) that the trial court was justified in holding that the evidence did not warrant a finding of an agreement to leave the property to the two children equally; and (4) that even assuming that the letter might be considered to be a contract between the father and the mother, nevertheless, by its terms the only obligation imposed upon Mrs. Berdan was to leave the property to the two children *exclusively,* which she did, and that the letter did not bind her to leave the property to them *in equal shares.*

In discussing the first contention, respondents cite section 1624, subdivision 6, of the Civil Code and section 1973, subdivision 6, of the Code of Civil Procedure to the effect that any agreement to leave property or to make any provision for any person by will must be ''in writing and *subscribed* by the party to be charged''. Respondents concede that as a matter of law the word ''Mother'' may constitute a legally binding signature if so intended by the party using it, but the question that the court was called upon to determine was not what might be a *legal signature,* but rather whether Mrs. Berdan intended the word ''Mother'' to constitute *her legal signature,* authenticating the *writing.* The question then before us is to determine if the trial court erred in its construction of the writing, which construction was to the effect that Mrs. Berdan did not intend the word ''Mother'' to constitute her legal signature binding her to any agreement to give the proceeds of her husband's estate by will to the two sons equally. The very language used by her shows that she did not believe that the word ''Dad'' was a legal signature. She apparently believed that it was necessary for her husband to write Elra A. Berdan, in order to sign the letter legally. ▮ This is some evidence that she did not sign the letter in a manner sufficient to satisfy the statute of frauds, since a signature consists both of the act of writing the party's name and of the intention thereby of finally authenti-

cating the instrument. (58 Cor. Jur. 718, 719; 27 Cor. Jur. 288; *Estate of Manchester,* 174 Cal. 417 [163 Pac. 358, Ann. Cas. 1918B, 227, L. R. A. 1917D, 629]; *Estate of Bernard,* 197 Cal. 36 [239 Pac. 404]; *Estate of Devlin,* 198 Cal. 721 [247 Pac. 577].)

In reference to the claimed intent of the father and mother to agree to make a will in favor of both sons equally, it should be noted that the letter was written more than two years after the execution of the will of Elra A. Berdan. If Mr. Berdan left his property to Mrs. Berdan only because of her agreement evidenced by this letter to leave it equally to the two children, why did he do so more than two years before the letter was written? This sentence seems to emphasize the fact that the will was executed 27 months before the letter was written and that the writing of the letter and the mother's statement on the back of it apparently had no influence on the execution of that will. The letter is a narration of a past event; it is not an agreement inducing the performance of an act. The fourth sentence of the paragraph explains why the will was made, namely, because " . . . Mother and I are getting along in years and neither of us is therefore able to earn anything and therefore it will be my pleasure to provide for Ada to the extent of my ability". Mr. Berdan could not have chosen any more appropriate language to indicate that he had changed his will simply because he recognized that his primary obligation was to care for his wife and to so arrange matters that "our income" would go to her after his death. The sentence upon which appellant most strongly relies, "If I should pass out before your Mother, of course she will leave all she possess, when it comes her time to pass out, to you and Harrison only", is a mere expression of Mr. Berdan's *belief* as to what his wife would do. He does not say "Your mother has agreed to leave the property to you and Harrison only." He merely states: "Of course she will leave it to you and Harrison only." Naturally he believed this, but the letter does not indicate that he changed the will because his wife had bound herself by a contract with him to so dispose of the property. As we have already noted, all that the letter states is that Mr. Berdan believes that Mrs. Berdan will leave the property to the children. Mr. Berdan does not state that she has definitely agreed to leave the property to them. Such a statement as is contained in the letter

was expressly held to be insufficient to create a contract in *Crawford* v. *Briant*, 53 Fed. (2d) 754 (C. C. A. 10). This was an action to enforce an alleged agreement to leave property by will. In affirming the judgment for defendant the court said on page 757:

"Declarations of testamentary intentions and purposes of themselves are not sufficient to constitute a contract to make a will. (Citing cases.) They must at least be made under circumstances which give the proposed beneficiary the right to assume that they are made in consideration of a promise or an act on his part and with the intention to contract, and so assuming he must act thereon to his detriment. (Citing cases.) None of the witnesses testified that Sugg said he had promised or agreed to give plaintiff such stock and real estate, but only that he was going to give it to her. There is no competent proof that Sugg ever expressly promised or agreed to will such property to plaintiff."

So here the letter at most states that Mrs. Berdan is going to make a certain disposition of her property, not that she has promised so to do. (See, also, *Cromwell* v. *Simons*, 280 Fed. 663, 670 (C. C. A. 2); *Blanc* v. *Connor*, 167 Cal. 719 [141 Pac. 217].) Furthermore, Mr. Berdan nowhere in the letter states that he has agreed to leave his property to his wife nor that he has agreed not to revoke the will made in her favor. He states only that he has executed a will, leaving the property to her. Despite anything contained in the letter, if the father had revoked the will and had executed another will leaving nothing to his wife, she would not, from this letter alone, have had any cause of action against him for breach of contract or to have a trust declared in his estate on the ground that he had broken a contract with her whereby he was required to leave his estate to her. Unless the letter would support such an action by her against his estate in such event, it is obvious that it could not have been intended to be, and in fact was not, a contract binding upon either Mr. or Mrs. Berdan. It is therefore apparent that there is nothing in the letter as a whole, or in any portion of it separately, which indicates that Mr. Berdan in 1932 executed his will in reliance on any contract by his wife concerning her disposition of the property.

When the construction given an instrument by the trial court appears to be reasonable and consistent with the

intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation even though it seems equally tenable. (*Estate of Mallon,* 34 Cal. App. (2d) 147 [93 Pac. (2d) 245]; *Estate of Bourn,* 25 Cal. App. (2d) 590 [78 Pac. (2d) 193].) We therefore find no legitimate reason to disturb the finding of the court in this regard.

Even if we indulge in the assumption that the letter did constitute a binding contract between the parents of appellant and respondent, nevertheless Mrs. Berdan has fully carried out any obligation imposed upon her by its terms. Mrs. Berdan was obviously bound to do only what was set forth in the letter, viz., to leave the property *"to you and Harrison only"*, i. e., to leave it to appellant and respondent *exclusively*. In other words, Mr. Berdan intended his wife to leave her property to the two children to the exclusion of all others. He did not intend her to leave it to her collateral relatives or to strangers. This does not prove that he necessarily intended her to leave it to the boys in equal shares. (*Biggins* v. *Lambert,* 115 Ill. App. 576, Id.; 213 Ill. 625 [73 N. E. 371, 104 Am. St. Rep. 238].)

Respecting the claimed statements made by the mother as to how she was making her will, it appears therefrom that the mother was leaving her estate to respondent. However, at no place in the conversation or by the terms of the will is he directed to divide the property equally. She said: "I am making Harrison the executor of my will because he is familiar with the lock box and the papers where everything in the west coast is kept; *but he will see* that it is equally divided between you . . . " And during that conversation she again mentioned that "Harrison was being made the executor and that *he would divide* everything equally and that I had nothing to worry about nor be concerned about". (Italics ours.) Appellant, in a letter dated September 22, 1937, before commencing suit, wrote Cedric respecting certain personal belongings of his mother and father and added: "Mother said while she was here that her coat or a ring and similar possessions I was to mention to you and inasmuch as you cannot use them you would be only too glad to send them to us. *This was when she explained that everything was being left to you and your judgment. . . . "* This indicates that neither appellant nor his mother believed that such action on her part would be in violation of any agreement be-

tween her and her husband. This statement is also inconsistent with appellant's present contention, and by it he has indicated his construction of the letter that it was not intended as an agreement binding his mother to divide the property equally.

From the facts stated it is immediately apparent that the bulk of the father's estate passed to the mother through the joint tenancy deed. There could be no contention therefore that appellant was entitled to any portion of that property under the claimed agreement or the will of the father. Respondent acquired the greater portion of the mother's estate through joint tenancy, leaving only approximately $7,131.11 for the payment of estate obligations and distribution under her will. This remainder was distributed as follows: $200 to appellant and the balance to respondent under the terms of her will.

■ Finally, appellant contends that the doctrine of illusory appointments should be applied as an aid in the construction of the letter. The trial court has determined this issue contrary to appellant's contention. In the case of the power of appointment the ultimate beneficiary is regarded as receiving the property from the donor of the power, not from the donee, while in the instant case, not even appellant contends that he is receiving the property from his father's estate.

In *Estate of Davis,* 14 Cal. App. (2d) 64 [56 Pac. (2d) 584], where the provisions of a will distributed all of decedent's property to one son to be distributed to decedent's other sons and grandchildren *as he deems best,* this court decided that the one son who was designated in the will as executor was invested with the power of determination as to what share of the estate he should distribute to each of the persons falling within the class to which the testatrix directed the distribution to be made. In affirming the judgment this court said pages 68 and 69:

"It is too clear to permit of argument that it was the desire and intention of the testatrix to invest the trustee named in the will with the power to determine what share of the estate he would distribute to each of the persons composing the class specified in the instrument. . . . "

■ We do not have in the instant case any such instruction in either will, to the executor thereof, to so distribute

the property as contended by appellant. Any claimed suggestion as to the manner of distribution arises under the letter in evidence and is directed not to the executor of any will, but to a contemplated beneficiary under the mother's will. Before any direction may be construed as creating a trust in the executor for the benefit of the beneficiary such language as creates such a trust must be directed to the executor or to the law. (*Estate of Marti*, 132 Cal. 666 [61 Pac. 964, 64 Pac. 1071]; *Estate of Tooley*, 170 Cal. 164, 167 [149 Pac. 574, Ann. Cas. 1917B, 516]; *Estate of Mallon, supra.*) The trial court was justified in concluding that the language used by the testator was entirely insufficient to create a trust.

For the reasons expressed the judgment is affirmed. Respondents to recover costs on appeal.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 12, 1940.