Filed 1/23/25  Velazquez v. Plug Connection CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| VICTORINA "DIANA" SANTIAGO VELAZQUEZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> PLUG CONNECTION, LLC, <br><br> Defendant and Appellant. | D082892 <br><br><br> (Super. Ct. No. 37-2023-00014059-CU-WT-NC) |

APPEAL from an order of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Pettit Kohn Ingrassia Lutz & Dolin, Jennifer N. Lutz, Michelle Perez-Yanez, and Annie F. Fraser for Defendant and Appellant.

Jimenez Loayza, Francisco A. Loayza, Marisol Jimenez Loayza; Williams Iagmin and Jon R. Williams for Plaintiff and Respondent.

## I. INTRODUCTION

After Victorina "Diana" Santiago Velazquez sued her employer, Plug Connection, LLC (Plug), Plug attempted to compel arbitration of the dispute. The trial court determined that Plug failed to establish a valid arbitration

agreement. Plug appeals that order contending first, the trial court erred because Velazquez did not dispute her handwritten name appeared on the arbitration agreement; and second, the trial court improperly excluded evidence. We affirm, finding sufficient evidence that Velazquez did not knowingly sign the alleged agreement and any errors in the evidentiary rulings were harmless.

## II. BACKGROUND

Plug is a greenhouse grower that specializes in cultivating and selling young plants. Velazquez began working for Plug as a seasonal employee in December 2021. When she returned for her second season in December 2022, Plug assigned Velazquez a position working with "a chemical named Dip 'N Grow." A week later, Plug terminated Velazquez's employment after she reported an allergic reaction to Dip 'N Grow.

On April 4, 2023, Velazquez filed a complaint against Plug asserting 11 causes of action.[1] On August 8, 2023, Plug moved to compel arbitration, alleging that Velazquez entered into a Mutual and Voluntary Agreement to Arbitrate ("Agreement") that covered the claims asserted in her complaint.

---

[1] The causes of action are: "1. Disability Discrimination [Cal. Gov. Code § 12940(a)]; 2. Disability Discrimination—Failure to Accommodate [Cal. Gov. Code § 12940(m)]; 3. Disability Discrimination—Failure to Engage in the Interactive Process [Cal. Gov. Code § 12940(n)]; 4. Retaliation [Cal. Gov. Code § 12940(h)]; 5. Harassment Based on Physical Disability [Cal. Gov. Code § 12940 (a)]; 6. Failure to Prevent Harassment and Discrimination [Cal. Gov. Code § 12940(k)]; 7. Negligent Hiring, Retention, and Supervision; 8. Wrongful Termination in Violation of Public Policy [Gov. Code § 12940, and Lab. Code §§ 98.6, 132a, 6310 and 6400]; 9. Retaliation [Cal. Lab. Code § 1102.5]; 10. Intentional Infliction of Emotional Distress; [and] 11. Violation of California Labor Code §§ 201, 203, 208—Failure to Pay all Wages Due Upon Termination."

In support of its motion, Plug submitted a declaration from Yvette Campos, who served as the company's "Human Resources Manager and the Accounting Manager at the same time on an as needed basis." In this role, Campos maintained Plug's personnel files and was familiar with Plug's new employee orientation. The orientation included an explanation of all onboarding documents, such as the Agreement, and allowed the employees to independently review the documents and ask questions prior to signing. Based on her review of Velazquez's personnel file and Plug's routine practices, Campos declared on information and belief that "Velazquez was given an explanation of the contents and effect of each paragraph of the Agreement and was given sufficient time to independently read and understand the terms of the Agreement," Velazquez did not ask any questions or try to negotiate, and Velazquez signed the Agreement. Campos also declared that Velazquez's orientation was conducted in Spanish, which was chosen by Velazquez as her preferred language.

Campos's declaration included a 2022 W-4 for Velazquez, the Agreement, and a hiring checklist as exhibits. All three documents contain the name "Diana Santiago" in similar handwriting at highlighted portions of the documents.[2] In the Agreement, which is written in Spanish, "Diana" is written in the box designated for a signature, "Santiago" is written above that box, and the box for the employee's name is blank. In the checklist, "Diana" is written in the space designated for the employee's name, and "Santiago" is written in the space for the employee's signature. The checklist states hiring representatives are required to explain all forms to new hires, and it is signed by Elsa Limon as the hiring representative. The checklist

[2] The parties agree this name refers to Velazquez even though it is not her full legal name.

3

included a space to acknowledge receipt of the Agreement, which was initialed "DS" and "EL."

Velazquez submitted her own declaration in opposition to the motion. She declared that her primary language is Mixteco, but she speaks Spanish. Having never attended school, Velazquez explained that her ability to write is limited to copying her name, telephone number, and address from another document, and she cannot otherwise read or write in English or Spanish.

According to Velazquez, during the onboarding process in 2022, Limon instructed Velazquez to write her name in the highlighted portions of numerous documents, stating they were necessary paperwork with no further explanation. Velazquez told Limon she was illiterate, so Limon helped Velazquez by filling in the forms and instructing Velazquez where to write Velazquez's name. Velazquez relied on Limon and had no ability to verify the documents' contents. Limon did not explain that the documents included an arbitration agreement, and she rushed the process without giving Velazquez an opportunity to review the documents with her family. Velazquez did not recall seeing the Agreement or copying her name on it, and she believed she merely filled out some paperwork with her name, address, and telephone number. Velazquez declared she would not have signed the Agreement had it been explained to her. Also, Campos was not present for Velazquez's onboarding process.

After taking the matter under submission, on September 14, 2023, the trial court denied Plug's motion to compel arbitration. The court determined that Velazquez produced sufficient evidence to challenge the existence of an arbitration agreement by declaring she did not recall the Agreement and would not have signed it had she been aware of it.

4

Regarding Plug's burden to prove the Agreement's validity, the trial court sustained Velazquez's objections to the portions of Campos's declaration that were based on information and belief, as well as Velazquez's objections to the declaration's three exhibits.

The trial court determined "[t]he only declaration provided by [Plug] is from Yvette Campos who was not present on the date the agreement was purportedly signed and cannot properly authenticate it." Citing Velazquez's declaration, the court explained that "Campos does not have personal knowledge regarding the central issues," and her declaration is not "admissible evidence establishing that [Velazquez] was aware of the agreement and signed the agreement." The court therefore found Plug did not meet its burden and denied the motion. Plug's timely appeal followed.

## III. DISCUSSION

### A. *Standards of Review*

"Although the party seeking arbitration bears the ultimate burden of proof as to the existence of an arbitration agreement, the burden of producing evidence on the issue may shift pursuant to a three-step process."[3] (*Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821, 830 (*Ramirez*).) First, the party seeking arbitration must produce prima facie evidence of a written arbitration agreement. (*Ibid*.) "A plain reading of [Code of Civil Procedure section 1281.2] indicates that as a preliminary matter the court is only required to make a finding of the agreement's

---

[3] During oral argument, counsel on both sides appeared to blur distinctions between these steps, as well as the issues of contract formation and unconscionability. We adhere to the three-step process described in both case law and the parties' briefing. Further, we do not reach the unconscionability argument because, as we explain, the record supports the trial court's determination that a mutually agreed on contract did not exist.

existence, *not an evidentiary determination of its validity*." (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219, italics added; *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 ["Accordingly, we conclude that defendants here met their initial burden by attaching to their petition a copy of the purported arbitration agreement bearing Espejo's electronic signature."]; see also, Cal. Rules of Court, rule 3.1330 ["The provisions [of the arbitration agreement] must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference.].)[4]

Second, the opposing party must produce evidence identifying a factual dispute as to the agreement's existence. (*Ramirez v. Golden Queen Mining Co., LLC*, *supra*, 102 Cal.App.5th at p. 830.) Finally, the party seeking arbitration must, by a preponderance of the evidence, prove a valid arbitration agreement. (*Ibid.*)

We independently review the trial court's determination on the second step. (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755–756 (*Iyere*).) On the third step, " 'the question for the reviewing court is whether that finding is erroneous as a matter of law.' [Citation.] ' " 'Specifically, the question becomes whether appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " ' " (*Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 52.)

"We review any ruling by the trial court on the admissibility of evidence for abuse of discretion," which occurs when the "ruling exceeds the bounds of reason." (*People ex rel. Owen v. Media One Direct, LLC* (2013) 213 Cal.App.4th 1480, 1483–1484.) An error in excluding evidence does not

---

4    This first step is undisputed on appeal.

warrant reversal unless the appealing party demonstrates "that a different result would have been probable if the error had not occurred." (*Zuniga v. Alexandria Care Center, LLC* (2021) 67 Cal.App.5th 871, 888.)

B.      *Velazquez Carried Her Burden on the Second Step*

One method to dispute the existence of a valid agreement is to produce admissible evidence challenging that one knowingly signed the contract which could create "a factual dispute as to the authenticity of the[ ] signatures.  The opponent [of the arbitration agreement] need not *prove* that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent, who retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature." (*Iyere*, *supra*, 87 Cal.App.5th at p. 755.)  Here, Plug argues Velazquez did not submit any evidence showing she did not sign the Agreement or that her signature was forged or inauthentic.  Plug contends that under these circumstances, Velazquez's inability to remember her handwritten signature is insufficient to show a dispute as to the Agreement's validity.  Plug further asserts Velazquez did not argue or establish that the Agreement was the product of fraud in the execution.[5]

"There is a split of authority among the Courts of Appeal as to what constitutes sufficient evidence to create a factual dispute about the authenticity of a handwritten signature on a document agreeing to

---

[5]     In the trial court and her appellate reply brief, despite not specifically referencing fraud in the execution, Velazquez relied on the doctrine's principles in arguing the Agreement was invalid for lack of mutual assent. We therefore requested and received supplemental briefing from both parties on whether fraud in the execution applied in this case.  Velazquez asserts that it does.

7

arbitration." (*Ramirez, supra,* 102 Cal.App.5th at p. 825.) In *Iyere,* the First District, Division Four held, "[i]f a party confronted with his or her *handwritten* signature on an arbitration agreement is unable to allege that the signature is inauthentic or forged, the fact that that person does not recall signing the agreement neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed." (*Iyere, supra,* 87 Cal.App.5th at p. 758, italics added.) The court in *Iyere* noted "[i]t is hornbook law that failing to read an agreement before signing it does not prevent formation of a contract." (*Id.* at p. 759.)

On the other hand, the Second District, Division Seven, held that a party opposing arbitration met her burden on the second step by filing a declaration "saying she did not recall the agreement" with her purported handwritten signature "and would not have signed it if she had been aware of it." (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 167 (*Gamboa*).) In reaching that conclusion, the court in *Gamboa* relied on several cases involving *electronic* signatures. (*Id.* at pp. 165, 167–168.) *Iyere* found those cases unpersuasive when applied to handwritten signatures because "[a]n individual cannot affirm or disavow an electronic signature from the face of a computer printout, but an individual normally can recognize or disavow a handwritten signature that purports to be his or her own." (*Iyere, supra,* 87 Cal.App.5th at p. 758.)

Plug argues the current matter is indistinguishable from *Iyere,* and we should not follow *Gamboa.* We find the facts of this case take us outside the *Iyere/Gamboa* split of authority.

In both *Iyere* and *Gamboa,* as well as *Ramirez* which subsequently sided with *Iyere,* there was no indication that the parties opposing arbitration

8

were illiterate or relied on any representations regarding the contents of the documents they signed.  Instead, the parties opposing arbitration merely asserted they had no recollection of the agreements and would not have signed them had they understood them.  (*Iyere, supra,* 87 Cal.App.5th at p. 753; *Gamboa, supra,* 72 Cal.App.5th at p. 167; *Ramirez, supra,* 102 Cal.App.5th at p. 827.)  These facts invoke the general rule that failure to read a contract does not prevent the contract's formation.  (*Iyere,* at p. 759.)

Although this general rule may apply even when a party is illiterate, there is an exception when a party reasonably relies on the representations of another regarding the contents of a document.  (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 687–688.)  "A contract is void for fraud in the execution where ' " ' . . . the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all.' " ' [Citation.]  In this instance, ' " 'mutual assent is lacking, and [the contract] is *void*.' " ' " (*Id.* at p. 688; see, e.g., *id.* at p. 690 [arbitration agreement void where Spanish speaking car purchaser relied on dealer's translation that did not include the English version's arbitration clause]; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 427–428 [sufficient showing of fraud in the execution where bank allegedly failed to mention arbitration when explaining account initiation documents to clients with limited English skills].)

Velazquez declared she was unable to read; her ability to write was limited to copying her name telephone, and address from another document; she informed Limon of her illiteracy; Limon helped her fill out the documents and described them as necessary paperwork without mentioning a contract or arbitration; and Velazquez believed she was merely filling out her name and contact information.  Velazquez's declaration is consistent with the

9

Agreement itself because she improperly filled out the boxes designated for her name and signature.

If believed, Velazquez's declaration indicates that she could not read the documents, she reasonably relied on Limon's explanation of the documents, and that she was unaware she wrote her name on a contract. This evidence could support a finding of lack of mutual assent, distinguishing this case from the *Iyere*/*Gamboa* line of cases. This evidence also adequately establishes a factual dispute as to the validity of the Agreement. (See, e.g., *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1200 ["If a party can show that it did not know it was signing a contract . . . both the contract and its arbitration clause are void for lack of mutual assent."]; *Berdan v. Berdan* (1940) 39 Cal.App.2d 478, 483–484 ["a signature consists both of the act of writing the party's name and of the intention thereby of finally authenticating the instrument"].) Consequently, the trial court did not err in determining that Velazquez satisfied her burden of production on the second step.[6]

C.    *Plug Has Not Shown Reversal Is Warranted on the Third Step*

Relying on *Iyere*, Plug contends the trial court erred in finding insufficient evidence of an arbitration agreement. Plug further asserts the trial court improperly excluded portions of Campos's declaration and its attachments. Plug believes Campos sufficiently authenticated the exhibits as a custodian of Plug's records, and Campos had sufficient personal knowledge of the matters declared on information and belief.

---

[6]    Although our analysis departs from the trial court's, "we may affirm a decision correct on any theory regardless of the trial court's reasoning." (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653, fn 8.)

10

As explained above, Plug's reliance on *Iyere* is misplaced. Velazquez's declaration provided a firsthand account of her hiring process and alone could support a finding that the Agreement was void due to lack of mutual assent. On the other hand, Plug's evidence was limited to Campos's description of Plug's customs and practices, providing circumstantial evidence that Limon may have explained the Agreement to Velazquez and given her an opportunity to review it. Under these circumstances, Plug's evidence regarding the Agreement's validity was not " ' " (1) "uncontradicted and unimpeached" [or] (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " ' " (*Garcia v. Stoneledge Furniture LLC, supra,* 102 Cal.App.5th at p. 52.) Consequently, the trial court's determination that Plug failed to carry its burden at the third step was not erroneous as a matter of law, and Plug has failed to meet the standard for reversal.

As for the trial court's evidentiary rulings, there was no abuse of discretion regarding Campos's testimony based on information and belief. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 87 ["Of course, it is true that an affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief."].) We are less convinced that Campos's absence from the creation of the exhibits attached to her declaration prevented her from sufficiently authenticating those documents for evidentiary purposes. (*Iyere, supra,* 87 Cal.App.5th at p. 758 ["the custodian of a document need not have been present or employed when the document was created or signed to authenticate a document in a company's files"].) Nonetheless, Plug has failed to show that any error in this regard affected the outcome.

Plug mistakenly asserts it is not required to show the result would have been different had the evidence been admitted.  (*Zuniga v. Alexandria Care Center, LLC, supra,* 67 Cal.App.5th at p. 888.)  Even if Plug addressed this issue, it would have been unsuccessful.  All three exhibits bore Velazquez's handwritten name in similar handwriting, indicating Velazquez wrote her name on the Agreement.  But as Plug acknowledges, Velazquez did not dispute that fact.  Instead, she disputed knowingly signing a contract.  Additionally, while the hiring checklist suggested that Limon may have explained the Agreement to Velazquez, the trial court was concerned with Plug's failure to present any witnesses of the Agreement's execution.  Relying on Velazquez's declaration, the trial court found Campos was not present for Velazquez's onboarding and therefore did not have any personal knowledge of the "central issues."  On the other hand, Velazquez's declaration provided a firsthand account of those matters and contradicted the implication that Plug followed its customary practices.  Accordingly, we find admission of the exhibits would not have changed the result.

For these reasons, Plug has failed to show reversal is warranted regarding the third step.

## IV. DISPOSITION

The order is affirmed.  Velazquez is awarded costs on appeal.


RUBIN, J.

WE CONCUR:


KELETY, Acting P. J.


CASTILLO, J.